In re Osborne Owen **FRASER**, a Witness before the Special February 1971 Grand Jury, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 71–1503.

United States Court of Appeals, Seventh Circuit.

Nov. 11, 1971.

Rehearing Denied Nov. 30, 1971.

R. Eugene Pincham, Chicago, Ill., for appellant.

William J. Bauer, U. S. Atty., Sheldon Davidson, Chicago, Ill., for appellee; Lee Allen Hawke, Special Atty., Dept. of Justice, John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before KILEY, CUMMINGS, and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

Osborne Owen Fraser was served with a grand jury subpoena *ad testificandum* in late February or early March 1971, commanding him to appear before the Grand Jury in Chicago, Illinois, on March 19, 1971, "to testify in behalf of the United States generally." Fraser appeared before the Grand Jury on several dates but refused to give any testimony about his alleged gambling operations, asserting his Fifth Amendment privilege against self-incrimination. Consequently, the Government petitioned for an order granting Fraser transactional immunity under 18 U.S.C. § 2514 in order to compel his grand jury testimony. The petition noted that the Grand Jury was investigating activities in the Northern District of Illinois allegedly involving the violation of 18 U.S.C. §§ 1952, 1955, 1511[1] and 371. Attached to the petition was a May 7, 1971, letter from the Assistant Attorney General in charge of the Criminal Division of the Department of Justice to the United States Attorney in Chicago stating that Fraser's testimony was "necessary and in the public interest" in connection with this grand jury investigation. Fraser moved to quash the subpoena to protect his "Fourth Amendment constitutional right to be secure * * * against unreasonable searches and seizures * * *." His supporting affidavit contended that the enforcement of the subpoena would constitute an unwarranted intrusion into his private affairs in the absence of probable cause that he had committed, was committing, or was about to commit an offense,[2] thus supposedly constituting an unreasonable search and seizure.

On June 25, 1971, holding that "Fourth Amendment rights are not involved in a situation such as this where the witnesses are going to be granted immunity," the district court entered an order instructing Fraser to testify before the Grand Jury and according him transactional immunity under 18 U.S.C. § 2514.[3] Fraser subsequently refused to comply with that order and was thereupon adjudged in contempt and committed to the custody of the United States Marshal until such time as he should obey the order "or in any event no longer than eighteen months or the discharge of the Special February 1971 Grand Jury." His motion for bail pending appeal was denied.

On appeal, Fraser contends that a grand jury witness cannot be compelled to testify "in violation of his Fourth Amendment right of privacy without any

1. Although the petition and other documents filed in the court below refer to 18 U.S.C. § 1911, at the oral argument before us, the Government advised that the proper reference is to 18 U.S.C. § 1511.

2. Presumably on this appeal Fraser uses the term probable cause in a broader sense, *i. e.*, probable cause to believe his testimony will be material in establishing that an offense has been committed, or who committed it.

3. In In Matter of Korman and Likas, 449 F.2d 32 (7th Cir. 1971), we held that full transactional immunity must be accorded before a grand jury witness can be compelled to testify after asserting his Fifth Amendment privilege against self-incrimination.

showing of probable cause or reasonableness for it." We agree with the Government's contention that it need not show probable cause or reasonableness to compel a subpoenaed grand jury witness to testify after he has been granted transactional immunity.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

No case thereunder has held that the Government must show probable cause or reasonableness before a grand jury witness may be compelled to testify. We are unwilling to stultify grand jury investigations by imposing such a condition, which is not embraced in the protection afforded by the Fourth Amendment.

The landmark case under the Fourth Amendment is of course Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. In that case the Supreme Court held that a judicial order compelling production of a party's invoice for the purpose of establishing his guilt, under a statute which made failure to comply an admission, amounts to an unreasonable search and seizure within the meaning of the Fourth Amendment.

Eighteen years later in Adams v. New York, 192 U.S. 585, 598, 24 S.Ct. 372, 375, 48 L.Ed. 575, the *Boyd* case was explained as follows:

"The security intended to be guaranteed by the Fourth Amendment against wrongful search and seizures is designed to prevent violations of private security in person and property and unlawful invasion of the sanctity of the home of the citizen by officers of the law, acting under legislative or judicial sanction, and to give remedy against such usurpations when attempted.

\* \* \* \* \* \*

We think they [the Fourth and Fifth Amendments] \* \* \* are rather designed to protect against compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizure of his papers and property, and to render invalid legislation or judicial procedure having such effect."

At the same Term, the Fourth Amendment was involved in Interstate Commerce Commission v. Baird, 194 U.S. 25, 46, 24 S.Ct. 563, 569, 48 L.Ed. 860. There the defendants resisted the production of certain contracts on the ground that their production would subject the parties to unreasonable searches and seizures of their papers contrary to the Fourth Amendment. However, the Court ruled that in view of the immunity statute protecting the witness from such use of his testimony as would result in punishment for crime, "Testimony [including the production of the documents sought by the Interstate Commerce Commission through a court order] given under such circumstances presents scarcely a suggestion of an unreasonable search or seizure", so that the Fourth Amendment was not violated.

█ The thrust of these cases is that once immunity coextensive with the prevailing view of the Fifth Amendment protection against compulsory self-incrimination is granted, the Fourth Amendment does not, without more, require a showing of probable cause or reasonableness before a grand jury subpoena *ad testificandum* may be enforced. As the Supreme Court observed in *Boyd*,

"[The Fourth and Fifth Amendments] throw great light on each other. For the 'unreasonable searches and seizures' condemned in the fourth amendment are almost always made for the

purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the fifth amendment; and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the fifth amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the fourth amendment." 116 U.S. at 633, 6 S.Ct. at 534.

See also Hill v. Philpott, 445 F.2d 144, 146–149 (7th Cir. 1971), certiorari denied, 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed. 2d 542.

 In the case of a subpoena *duces tecum*, the Fourth Amendment operates independently of the Fifth to protect the witness against orders to produce physical evidence which are unreasonable because they are too broad or too onerous. This is the import of Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652, on which appellant relies.[4] There the Supreme Court vacated a subpoena *duces tecum* so broad that compliance would have impaired the witness' ability to carry on his business. 201 U. S. at 77, 26 S.Ct. 370, 50 L.Ed. 652. Notably, however, in rejecting petitioner's objection to his being called to testify when no specific charge against any particular person was pending before the grand jury, the Court pointed out that the Grand Jury was entitled to inquire for itself whether a crime cogniza-

ble by the Court had been committed. The opinion stated that it would be impossible to conceive that the examination of grand jury witnesses must be stopped "until a basis is laid by an indictment formally preferred, when the very object of the examination was to ascertain who shall be indicted." 201 U.S. at 65, 26 S.Ct. at 375. Similarly here, in view of the broad inquisitorial powers of a grand jury, examination of witnesses appearing before it need not be stopped until the Government proves probable cause or reasonableness.

Recently in In Re Dionisio, 442 F.2d 276, 279 (7th Cir. 1971), we held that a grand jury subpoena "[c]ompelling a person to furnish an exemplar of his voice is as much within the scope of the fourth amendment as is compelling him to produce his books and papers."[5] Fraser relies on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, for the proposition that there is no difference between compelled oral testimony and the seizure of tangible items, so that, he contends, *Dionisio* requires us to extend the Fourth Amendment requisite of probable cause to the grand jury subpoena commanding him to testify.

In *Katz* the Fourth Amendment was held applicable to FBI recordings of telephone conversations overheard by means of an electronic listening device attached to the outside of a public telephone booth.[6] While the Court held that the

---

4. See Schwimmer v. United States, 232 F.2d 855 (8th Cir. 1956) certiorari denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1936) ; Note, The Rights of a Witness Before a Grand Jury, 1967 Duke L.J. 97, 107–108.

5. In *Dionisio* this Court held that compelled production of grand jury witnesses' voice exemplars did not infringe the Fifth Amendment privilege against self-incrimination because a voice exemplar is not testimonial. United States v. Wade, 388 U.S. 218, 222–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 265–267, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908. Nevertheless, the wit-

nesses were potential defendants, and since the purpose of the voice exemplars was to identify the voices obtained by FBI agents pursuant to a court-ordered wiretap, the self-incriminatory impact of the compelled exemplars was clear. Thus the compelled exemplars were at odds with the spirit of the Fifth Amendment. Because the Fifth Amendment illuminates the Fourth (see the quote from Boyd v. United States in text *supra*), the Fourth Amendment violation appears more readily than where immunity is granted, and in *Dionisio* immunity had not yet been granted.

6. Most of the pre-*Katz* Fourth Amendment cases of the Supreme Court are well summarized in Oklahoma Press Publishing

Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements, 389 U.S. at 353, 88 S.Ct. at 510, it emphasized that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy'" and that the Fourth Amendment protects individual privacy against only "certain kinds of governmental intrusion." 389 U.S. at 350, 88 S.Ct. 507.

■■ A grand jury subpoena to testify is not that kind of governmental intrusion on privacy against which the Fourth Amendment affords protection, once the Fifth Amendment is satisfied. This conclusion follows from the purposes and *modus operandi* of the Grand Jury, a bedrock institution in Anglo-American law.[7] In Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979, these considerations prompted Mr. Justice Pitney to state that the giving of testimony and the attendance upon a grand jury in order to testify are public duties which every person "within the jurisdiction of the Government is bound to perform upon being properly summoned * * *." Speaking of grand jury witnesses, he pointed out (at p. 282, 39 S.Ct. at p. 471):

> "He [the witness] is not entitled to set limits to the investigation that the grand jury may conduct. The Fifth Amendment and the statutes relative to the organization of grand juries recognize such a jury as being possessed of the same powers that pertained to its British prototype, and in our system examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual. Hale v. Henkel, 201

U.S. 43, 65 [26 S.Ct. 370, 50 L.Ed. 652]. It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. Hendricks v. United States, 223 U.S. 178, 184 [32 S.Ct. 313, 56 L.Ed. 394]."

■ Accordingly we reject Fraser's argument that the Fourth Amendment requires a showing of probable cause or reasonableness before he may be compelled to testify before the Grand Jury. In In Re Dionisio, *supra*, 442 F.2d at 281, the very case on which Fraser relies, this Court rejected such a proposed extension of Fourth Amendment protection, specifically pointing out "that the grand jury does not need probable cause to subpoena witnesses" to compel their testimony. This accords with a similar ruling of the Ninth Circuit in United States v. Weinberg, 439 F.2d 743, 749 (1971), where Judge Hamley stated, "but compelled grand jury testimony is neither a search for, nor a seizure of, oral statements in the sense envisioned by the Fourth Amendment." He relied on the following statement, which we also approve, in In Re Grand Jury Witnesses, 322 F.Supp. 573, 576 (N.D.Cal. 1970),

> "The grand jury does not need to have probable cause to investigate;

Co. v. Walling, 327 U.S. 186, 196–209, 214–216, 66 S.Ct. 494, 90 L.Ed. 614.

7. See generally, Note, The Grand Jury as an Investigatory Body, 74 Harv.L.Rev. 590 (1961); Note, The Rights of a Witness Before a Grand Jury, 1967 Duke

L.J. 97. The Fifth Amendment, of course, guarantees a grand jury indictment to the criminally accused in federal prosecutions where a conviction could result in infamous punishment. See Federal Rules of Criminal Procedure § 7(a).

rather its function is to determine if probable cause exists. And if probable cause is not required to investigate, it follows that probable cause is not required to make the preliminary showing necessary to call a witness whose testimony may shed light on criminal activity which the grand jury *must* investigate if the national interest is to be effectively served. Only the grand jury can properly decide what may be useful to such an investigation, and if it has any meaningful role to play, this is a function it must have free from undue interference of the Court." [8]

Fraser also relies on In Matter of [Grand Jury Proceeding] Egan, 450 F. 2d 199 (3d Cir. en banc 1971), certiorari granted, 404 U.S. 990, 92 S.Ct. 531, 30 L.Ed.2d 541 where only two of eight judges took the position that Sister Egan, a grand jury witness, was entitled by the Fourth Amendment to a hearing whether the grand jury's questions were the fruits of unconstitutional electronic surveillance. The concurring opinions there also depended on unlawful eavesdropping. In the light of Assistant Attorney General Wilson's June 25, 1971, letter stating that Fraser had not been intercepted on any electronic surveillance. Fraser makes no claims comparable to Sister Egan's, so that none of the opinions in her case is in point. His remaining cases [9] likewise do not hold that the Government must show probable cause or reasonableness before a subpoenaed grand jury witness under a proper grant of immunity can be compelled to testify.

The contempt order is affirmed.

---

8. See also United States v. Neff, 212 F.2d 297, 301–302 (3rd Cir. 1954) ; Note, The Grand Jury as an Investigatory Body, 74 Harv.L.Rev. 590, 592–593 (1961). Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, cited by Fraser, is not to the contrary. It merely held that the Fourth Amendment protects a corporation from an unlawful search and seizure of its books and records,

and that the Government could not avail itself of knowledge obtained by unconstitutional means.

9. See Blau v. United States, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306; Caldwell v. United States, 434 F.2d 1081 (9th Cir.), certiorari granted, 402 U.S. 942, 91 S.Ct. 1616, 29 L.Ed.2d 109 ; In Re Bonanno, 344 F.2d 830 (2d Cir. 1965).