In re John Alexander WOMACK and James Andrew Robinson, Witnesses Before the Special February, 1971 Grand Jury.

UNITED STATES of America ex rel. John Alexander WOMACK and James Andrew Robinson, Relators-Appellants,

v.

John C. MEISZNER, United States Marshal for the Northern District of Illinois, Respondent-Appellee.

No. 71-1782.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1972.

Decided Aug. 10, 1972.

Rehearing Denied Aug. 28, 1972.

Edward J. Calihan, Jr., Chicago, Ill., Antonio M. Gassaway, Chicago, Ill., for relators-appellants John Alexander Womack and James Andrew Robinson.

Sidney M. Glazer, Kenneth L. Greenman, Attys., U. S. Department of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., Ronald G. Scheraga, Attys., United States Dept. of Justice, Washington, D. C., Sheldon Davidson, Special Atty., United States Dept. of Justice, for respondent-appellee.

Before SWYGERT, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

PER CURIAM.

This appeal requires us to determine the scope of applicability of Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

In March, 1971, the relators, Womack and Robinson, appeared as witnesses in response to subpoenas before a grand jury of the Northern District of Illinois investigating interstate gambling. Each refused to testify on grounds of self-incrimination and was given "transactional immunity" under 18 U.S.C. § 2514 and ordered to testify. Upon their refusal, they were adjudged in civil contempt and were committed to custody on May 25, 1971. Application for emergency bail was denied by this court on June 3 and by Mr. Justice Marshall of the United States Supreme Court on July 6, 1971. This court denied relators' appeal of the contempt judgments as frivolous by order of June 17, 1971. The Supreme Court denied a petition for a writ of certiorari on October 12, 1971. Womack v. United States, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89.

While the petition for certiorari was pending, relators filed a new motion to vacate the judgments of contempt. The principal ground advanced was that "each of them, believe, and do aver on such belief, that they were subjects of an illegal surveillance, and that such surveillance either led to the issuance of the subpoenas for their appearance before the captioned Grand Jury or constituted the source of information that motivated the United States Attorney in his determination that the evidence of these relators, and each of them, was necessary to the public interest, all in violation of the Fourth Amendment rights. . . ." Relators also contended that they were entitled to an evidentiary hearing on the question of surveillance, that a grand jury witness cannot be compelled to testify absent a showing of probable cause, and that the transactional immunity afforded by the court order was not broad enough.

In response the government filed a letter from the Assistant Attorney General representing that "A review of the Department of Justice files discloses no information indicating that conversations of . . . James Robinson and John Alexander Womack were at any time overheard by electronic surveillance or that premises known to be owned, leased or licensed by these individuals were covered by electronic surveillance by the Federal Bureau of Investigation." [1]

The district court, 333 F.Supp. 479, denied the motion to vacate the judgments of contempt. Thereafter, the government filed in this court a letter from the acting Assistant Attorney General stating that "the Department of Justice files discloses no information indicating that the above-named individuals [Robinson or Womack] or any premises known to be owned, leased or licensed by them, were the subject of pen register

surveillance by the Federal Bureau of Investigation."

■ Inasmuch as the relators were given the broader "transactional" immunity rather than the "use immunity" which has been held to satisfy the Fifth Amendment, Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), their argument that the immunity granted was too narrow is without merit.

We rejected the argument that the Fourth Amendment requires a showing of probable cause or reasonableness before a witness may be compelled to testify before a grand jury in Fraser v. United States, 452 F.2d 616 (7th Cir. 1971).

More difficult of resolution is their argument that some person, other than either of them, had been the victim of illegal electronic and mechanical surveillance and that the fruit of that illegal act was employed against them in violation of their Fourth Amendment rights. Insofar as their constitutional rights are concerned, this issue was decided adversely to their contention in Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969), where Mr. Justice White, speaking for the Court, said:

"The exclusionary rule fashioned in Weeks v. United States, 232 U.S. 383 [, 34 S.Ct. 341, 58 L.Ed. 652] (1914), and Mapp v. Ohio, 367 U.S. 643 [, 81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), excludes from a criminal trial any evidence seized from the defendant in violation of his Fourth Amendment rights. Fruits of such evidence are excluded as well. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391–392 [, 40 S.Ct. 182, 183, 64 L.Ed. 319] (1920). Because the Amendment now affords protection against the uninvited ear, oral statements, if illegally overheard, and their fruits are also subject to suppression. Silverman v.

---

1. The letter added, "Also, the above-named individuals were never subjected to electronic surveillance by the Internal Revenue Service."

United States, 365 U.S. 505 [, 81 S.Ct. 679, 5 L.Ed.2d 734] (1961); Katz v. United States, 389 U.S. 347 [, 88 S.Ct. 507, 19 L.Ed.2d 576] (1967).

"In *Mapp* and *Weeks*, the defendant against whom the evidence was held to be inadmissible was the victim of the search. However, in the cases before us each petitioner demands retrial if any of the evidence used to convict him was the product of unauthorized surveillance, regardless of whose Fourth Amendment rights the surveillance violated. At the very least, it is urged that if evidence is inadmissible against one defendant or conspirator, because tainted by electronic surveillance illegal as to him, it is also inadmissible against his codefendant or coconspirator.

"This expansive reading of the Fourth Amendment and of the exclusionary rule fashioned to enforce it is admittedly inconsistent with prior cases, and we reject it. The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."

The *Alderman* case would be dispositive of the relators' argument as it was framed before us—a pure constitutional question. However, during our consideration of this appeal, the Supreme Court rendered its opinion in Gelbard v. United States, 408 U. S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), wherein the Court held that grand jury witnesses are entitled to invoke as a defense to contempt charges brought against them for refusing to testify a provision of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which directs that "[w]henever any wire or oral communication has been inter-cepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any . . . proceeding in or before any . . . grand jury, . . . if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.[2]

*Gelbard* disposed of three cases—United States v. Gelbard, 443 F.2d 837 (9th Cir. 1971), In re Egan, 450 F.2d 199 (3d Cir. 1971), and In re Walsh, 450 F.2d 231 (3d Cir. 1971)—and four grand jury witnesses, Gelbard, Parnas, Egan and Walsh. Each of the witnesses claimed that his or her own conversations had been overheard by illegal wiretapping. Mr. Justice Brennan limited the majority holding at the outset by narrowly defining the issue: "Our inquiry, then, is whether a showing that interrogation would be based upon the *illegal interception of the witness's communications* constitutes a showing of 'just cause' that precludes a finding of contempt." 408 U.S. 45, 92 S.Ct. at 2360 (emphasis added). He added "we must assume, in the present posture of these cases, that the Government has intercepted *communications of the witnesses. . . ." Id.* (emphasis added).

Mr. Justice Douglas, concurring, pointed out that "[i]n each of the present cases a grand jury witness seeks to prove and vindicate suspected unconstitutional seizures of his own telephone conversations." *Id.* at 62, 92 S.Ct. at 2368.

Mr. Justice White, the author of *Alderman*, was most explicit of all in his concurring opinion:

"Of course, where the Government officially denies the fact of electronic surveillance *of the witness*, the matter is at an end and the witness must answer." *Id.* at 71, 92 S.Ct. at 2373 (emphasis added).

2. Mr. Justice Brennan, delivering the opinion of the Court, stated that "we do not reach any of the constitutional issues tendered as to the right of a grand jury witness to rely upon the Fourth Amendment as a basis for refusing to answer questions." 408 U.S. at 45, 92 S.Ct. at 2360, n. 5.

Mr. Justice Rehnquist, dissenting, stressed the language of 18 U.S.C. § 3504(a) (1), which was part of the Organized Crime Control Act of 1970, and which provides in pertinent part:

"In any . . . proceeding entered before any . . . grand jury. . . .

. "(1) Upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act."

Mr. Justice Rehnquist noted that section 3504(a) (1) requires less of a burden on the government from a procedural standpoint than *Alderman*, but that in regard to the critical issue of "standing to object," the Senate Report stated:

"Lastly, it should be noted that nothing in § 3504(a) (1) is intended to codify or change present law defining illegal conduct or prescribing requirements for standing to object to such conduct or the use of evidence given under an immunity grant. See, *e. g.*, Giordano v. United States, 394 U.S. 310 [, 89 S.Ct. 1163, 22 L.Ed.2d 297] (1969); Alderman v. United States, 394 U.S. 165 [, 89 S.Ct. 961, 22 L.Ed.2d 176] (1969)."

We can only conclude that neither Congress in the Omnibus Crime Control and Safe Streets Act or in the Organized Crime Control Act nor the Supreme Court in *Gelbard* intended to overrule or change the constitutional rule of *Alderman* that only the person whose privacy is invaded by an illegal electronic surveillance has standing to object.

Hence the representations in this case by the Department of Justice that the privacy of neither relator was subject to interference put "the matter . . . at an end and the witness[es] must an-swer." *See* Fraser v. United States, 452 F.2d 616 (7th Cir. 1971); United States v. Doe, 451 F.2d 466 (1st Cir. 1971).

Judgments affirmed.