**In re SUBPOENAS DUCES TECUM NOS. A99–0001, A99–0002, A99–0003 and A99–0004.**

**Nos. 1:99MC00005, 1:99MC00006.**

United States District Court,
W.D. Virginia,
Abingdon Division.

June 23, 1999.

Rick A. Mountcastle, S. Randall Ramseyer, U.S. Attorney's Office, Abingdon, VA, for plaintiffs.

Dennis E. Jones, Dennis E. Jones & Associates, Lebanon, VA, for defendants.

## MEMORANDUM OPINION

SARGENT, United States Magistrate Judge.

### I. Background and Facts

This matter came before the court for hearing on May 17, 1999, on motions to quash, ("the Motions to Quash"), certain subpoenas duces tecum served on a local physician and three health care providers by the United States Attorney for the Western District of Virginia pursuant to 18 U.S.C.A. § 3486. These matters were referred to the undersigned for hearing and determination pursuant to 28 U.S.C.A. § 636(b)(1)(A).

While no evidentiary hearing has been held in this matter, certain facts appear uncontested by the parties. On April 29, 1999, Federal Bureau of Investigation, ("FBI"), agents served four subpoenas duces tecum on an employee of Family Health Care Associates of Southwest Virginia, P.C., ("Family Health Care"). Copies of these subpoenas are attached to the Motions to Quash. The subpoenas appear identical, except that each subpoena is directed to a different person or entity. Subpoena No. A99–0001 is directed to Dr. Dwight L. Bailey or the custodian of records of Dwight L. Bailey, M.D.; Subpoena No. A99–0002 is directed to Dr. Dwight L. Bailey or the custodian of records of Ridgewood Health Care Clinic; Subpoena No. A99–0003 is directed to Dr. Dwight L. Bailey or the custodian of records of Family Health Care; Subpoena No. A99–0004 is directed to Dr. Dwight L. Bailey or the custodian of records of Abingdon Family Health Care. Family Health Care is the sole owner and operator of Ridgewood Health Care Clinic, ("Ridgewood"), and Abingdon Family Health Care.

The subpoenas state the following:

You are hereby commanded to appear before Assistant U.S. Attorney S. Randall Ramseyer and/or Rick A. Mountcastle, or another Assistant U.S. Attorney, at the time and place set forth below. You are required to bring with you and produce the records described in the attachment to this subpoena. The production of such records is necessary to the United States Department of Justice's performance of its responsibility to investigate Federal health care offenses, as defined in Title 18, United States Code, Section 24. In addition to the production of such documents, you are required to give testimony concerning the production and authentication of such records.

The subpoenas were issued by the Department of Justice and are signed by Assis-

tant U.S. Attorney Rick A. Mountcastle. The subpoenas state that the requested documents must be provided at the U.S. Attorney's Office in Abingdon, Virginia, at 10 a.m. on Tuesday, May 18, 1999. The subpoenas also stated that they were issued under authority of 18 U.S.C.A. § 3486 and that "[f]ailure to comply with the requirements of this subpoena will render you liable to proceedings in the United States District Court to enforce obedience, pursuant to Title 18, United States Code, Section 3486(c)."

The subpoenas compelled the production of the following documents:

1. All patient records and documentation concerning patients whose services were billed to Medicare, Medicaid, UMWA, Trigon, Blue Cross Blue Shield, U.S. Department of Labor Black Lung Program and CHAMPUS, including complete medical files, patient appointment books, patient billing records, office sign-in sheets, and telephone messages in any form.

2. All purchase records and invoices reflecting Schedule II through V controlled substance purchases, DEA Official Order Forms, records of inventories, dispensing records, DEA Form 41 Registrant, Inventory of Drugs Surrendered, DEA form 106 Reports of Theft or Loss of Controlled Substances.

3. All original accounting and bank records, general ledgers, patient information/insurance cards, cash receipt and disbursement records, business ownership records and other items identifying sources of income from billings. These records include the following:

   patient billing records

   patient account records

   business bank account records

   personal bank account records including checks (front & back)

   bank statements

   deposit items and tickets

   check ledgers

   expense records, including receipts, contracts and journals

   accounting ledgers & journals

   cash receipt journals

   insurance correspondence, instructions, memoranda and the like detailing communications and transactions with insurors

   titles, receipts, deeds, certificates, and other records of assets purchased in whole or in part with practice related funds.

4. All documents regarding health care plans' requirements for claim filing and record retention, including instructions, manuals, code listings, memoranda, notices, directives, phone messages and correspondence. All documents regarding the Medicaid requirements for claim filing and record retention, including instructions, manuals, code listings, memoranda, notices, directives, phone messages and correspondence.

5. All records of any controlled substance samples provided to Dr. Dwight L. Bailey, M.D. by wholesale drug companies, manufacturers, or their representatives. All documents regarding proper uses and contraindications for controlled substances, including correspondence, notices, and directives from governmental entities, drug manufacturers, wholesalers, retailers and pharmacies, or their representatives.

The subpoenas compelled the production of all such records, regardless of whatever form they were in or medium in which they were held, for the period of January 1992 to the present.

On May 12, 1999, Dr. Bailey and Family Health Care moved the court to quash the subpoenas based on a number of grounds. First, Dr. Bailey asserts that he is the "target" of an ongoing criminal investiga-

tion,[1] and, as such, the act of producing the requested documents and/or testifying regarding the possession and authenticity of the documents would violate his right against self-incrimination under the Fifth Amendment to the United States Constitution. Second, the movants assert that the subpoenas, on their face, are overly broad and that compliance with the subpoenas will be unduly burdensome on the movants. In support of this position, the movants assert that the subpoenas compel the production of approximately 15,000 patient files, which contain between 750,000 and 1,250,000 pages of material. Third, the movants assert that the subpoenas violate their rights against unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution in that the U.S. Attorney has served these subpoenas without a court determination that probable cause exists to believe that the movants are involved in any criminal activity. Fourth, the movants argue that producing patient records absent a showing of probable cause violates the patients' right of privacy in their medical records. In the alternative, the movants also request that, should the court order them to comply with the subpoenas, the court order the U.S. Attorney's Office to reimburse them for the cost of retrieving and photocopying of all the requested records.[2]

The U.S. Attorney, through his assistants, asserts that 18 U.S.C.A. § 3486 gives him the broad authority to issue "health care subpoenas" to obtain records which "may be relevant" to his investigation of certain criminal health care offenses from any individual or entity. The U.S. Attorney also asserts that the statute does not require any probable cause showing, and, at most, a court may determine only whether the documents requested "may be relevant" to a health care offense investigation. See 18 U.S.C.A. § 3486.

The U.S. Attorney contends that the subpoenas are precise and detailed in what documents are sought and that the mere fact that the subpoenas call for the production of a large volume of documents does not make compliance with the subpoenas unreasonable. To address any concern that compliance with the subpoenas may place an undue burden on the movants, the U.S. Attorney has offered to allow the movants to first produce all documents with the exception of patient treatment files and records pertaining to claim filing procedures. After reviewing these documents, the U.S. Attorney would then notify the movants what, if any, patient files and records pertaining to claim filing procedures he wished them to produce. The U.S. Attorney contends that absent specific statutory authority, his office should not be required to reimburse a party for costs associated with complying with a subpoena. The U.S. Attorney also argues that the production of these documents will not violate Dr. Bailey's Fifth Amendment right against self-incrimination. Finally, the U.S. Attorney states that production of the requested patient medical records will not violate the patients' privacy rights because the patients have no real expectation of privacy in the records requested and any individual privacy interest is outweighed by the significant government interests in investigation of acts of health care fraud.

## II. Analysis

In 1996 Congress passed and President Clinton signed the Health Insurance Portability and Accountability Act, Pub.L. 104–191, ("the Act"), which, according to at least one commentator, includes the most comprehensive set of federal health care fraud provisions in history. Kirk J. Nahra, Commentary, *The Anti–Fraud Elements Of The Kennedy–Kassebaum Legis-*

1. The U.S. Attorney conceded at the May 17, 1999, hearing that Dr. Bailey is a "target" of an ongoing criminal investigation.

2. At the May 17 hearing movants' counsel asserted that movants already had incurred approximately $40,000.00 in personnel and photocopying expenses in an effort to comply with the subpoena.

*lation,* 3 No. 15 MEALEY's LITIG.REP.: INS. FRAUD 19 (1996). Section 248 of the Act added a new statute, 18 U.S.C.A. § 3486, which authorizes the Attorney General, or her designee, to issue subpoenas duces tecum [3] to obtain records for investigations relating to federal criminal health care offenses. Section 3486(a)(1) states:

(1) In any investigation relating to any act or activity involving a Federal health care offense, ... the Attorney General or the Attorney General's designee may issue in writing and cause to be served a subpoena—

(A) requiring the production of any records (including any books, papers, documents, electronic media, or other objects or tangible things), which may be relevant to an authorized law enforcement inquiry, that a person or legal entity may possess or have care, custody, or control; or

(B) requiring a custodian of records to give testimony concerning the production and authentication of such records.

(2) A subpoena under this subsection shall describe the objects required to be produced and prescribe a return date within a reasonable period of time within which the objects can be assembled and made available.

(3) The production of records shall not be required under this section at any place more than 500 miles distant from the place where the subpoena for the production of such records is served....

18 U.S.C.A. § 3486 (West Supp.1999).

The term "federal health care offense" is defined in 18 U.S.C.A. § 24(a) to mean a violation of, or a criminal conspiracy to violate, 18 U.S.C.A. § 669 (theft or embezzlement from a health care benefit program), § 1035 (making false statements in relation to delivery of or payment for health care benefits), § 1347 (fraud on a

health care benefit program) or § 1518 (obstruction of criminal investigation of health care offenses). The term also includes violations of 18 U.S.C.A. § 287 (making false claims against the federal government), § 371 (conspiracy to defraud federal government), § 664 (theft or embezzlement from employee benefit plan), § 666 (theft or embezzlement from program receiving federal funds), § 1001 (making false statements), § 1027 (false statements to employee benefit plans), § 1341 (mail fraud), § 1343 (wire fraud) or § 1954 (improper influence of employee benefit plan), if the violation or conspiracy relates to a health care benefits program. 18 U.S.C.A. § 24(a) (West Supp.1999). The term "health care benefit program" is defined in 18 U.S.C.A. § 24(b) as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C.A. § 24(b) (West Supp.1999).

While commentators have referred to these subpoenas as "administrative subpoenas," *see* Kirk J. Nahra, Commentary, *The Anti–Fraud Elements Of The Kennedy–Kassebaum Legislation,* 3 No. 15 MEALEY's LITIG.REP.: INS. FRAUD 19; Kevin J. Darken, *Understanding The New Health Care Fraud Legislation,* 12 CRIM.JUST. 30 (American Bar Association, Fall 1997), they do not qualify as administrative subpoenas in the traditional sense. Administrative subpoenas typically are issued by an agency which is seeking information from an individual or entity which the agency regulates to confirm compliance with its regulations. *See* Graham Hughes, *Administrative Subpoenas And The Grand Jury: Converging Streams Of Criminal and Civil Compulsory Process,*

---

**3.** In the Act as originally enacted, this section's heading referred to "authorized investigative demands." Pub.L. 104–191, Title II, § 248(a). The heading was amended in 1998 to refer to "administrative subpoenas." Pub.L. 105–314, Title VI, § 606(a)(1) Oct. 30, 1998.

47 Vand.L.Rev. 573, 580 (April 1994). This Act, however, empowers the federal government's prosecutors, the Attorney General and her designees, local U.S. Attorneys, to gather evidence regarding suspected criminal activity. *See United States v. Anderson,* 31 F.Supp.2d 933, 941 n. 3 (D.Kan.1998).

A. · Movants' Fourth Amendment challenge to the subpoenas

The undersigned can find no case in which a court has addressed the validity of the subpoena power granted to the Attorney General by 18 U.S.C.A. § 3486. Therefore, it appears that the issue of whether subpoenas issued pursuant to this section violate a recipient's Fourth Amendment rights is one of first impression. Nonetheless, there are numerous cases from federal courts at all levels which address the underlying issues in the context of administrative searches and subpoenas authorized by other acts of Congress.

The court will start its analysis with the language of the Constitution itself. The Fourth Amendment to the U.S. Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, . . . .

U.S. CONST. AMEND. IV.

Thus, the Fourth Amendment requires that law enforcement officials who wish to search a location for evidence of a crime must first obtain a warrant from a judicial officer. *Baysden v. United States,* 271 F.2d 325 (4th Cir.1959). The judicial officer may issue a search warrant only if, based upon a sworn statement, she finds sufficient evidence to show that there is probable cause to believe that a crime has been committed and that evidence of this crime can be found in the location to be searched. *Id.; United States v. Dickerson,* 166 F.3d 667 (1999).

Whether a particular governmental intrusion falls within the protection of the Fourth Amendment depends, however, upon whether the defendant has a reasonable expectation of privacy in the area searched or the property seized. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Supreme Court has held that searches for administrative purposes, like searches for evidence of crime, are encompassed by the Fourth Amendment. *State of Michigan v. Tyler,* 436 U.S. 499, 505–06, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). The Court also has held that the Fourth Amendment protects commercial buildings as well as private homes from unreasonable searches and seizures. *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The Court has held, however, that the showing of probable cause that is necessary to secure a warrant may vary with the object and intrusiveness of the search. *Tyler,* 436 U.S. at 506, 98 S.Ct. 1942. In particular, the Court has held that showing "probable cause" in the traditional criminal sense is not required for the issuance of a warrant to conduct an administrative search or inspection. *Barlow's,* 436 U.S. at 320, 98 S.Ct. 1816. "For purposes of an administrative search . . ., probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" *Barlow's,* 436 U.S. at 320, 98 S.Ct. 1816; *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The Court has held that this lower standard of probable cause is constitutionally permissible in the administrative inspection context because the intrusion into an individual's privacy is less than

that in the criminal context and is outweighed by the public's interest in the regulatory program. *See United States v. Lawson*, 502 F.Supp. 158, 165 (D.Md.1980).

The Court also has recognized that administrative inspections of certain "pervasively regulated industries" may be conducted without warrants in certain circumstances. *Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601. In so recognizing, the Court stated: " 'Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise.' " *Burger*, 482 U.S. at 700, 107 S.Ct. 2636 (quoting *Barlow's*, 436 U.S. at 313, 98 S.Ct. 1816). The Court stated: "Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search ... have lessened application in this context." *Burger*, 482 U.S. at 702, 107 S.Ct. 2636. The Court held that a warrantless search would be held reasonable in the context of a pervasively regulated business if 1) there is a "substantial" government interest that underlies the regulatory scheme pursuant to which the search is made; 2) the warrantless inspection must be necessary to further the regulatory scheme; and 3) the inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. *Burger*, 482 U.S. at 702–03, 107 S.Ct. 2636. Based on this reasoning, the Court has allowed warrantless administrative inspections to occur in the firearms, mining and junkyard industries. *See United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); and *Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601.

In *United States v. Acklen*, the Sixth Circuit specifically found that a pharmacist has a reduced expectation of privacy in records kept in compliance with the Controlled Substances Act. 690 F.2d 70, 75 (1982). In *Acklen*, the Drug Enforcement Agency, ("DEA"), used administrative inspection warrants issued pursuant to 21 U.S.C.A. § 880 to search the premises of the defendant's pharmacy, removing prescriptions he suspected were forged or altered.[4] 690 F.2d at 71. Following his indictment, the defendant moved to suppress the evidence gathered against him through the use of these administrative inspection warrants. *Id.* The defendant argued that the administrative warrants violated the Fourth Amendment because they were not issued upon a showing of probable cause in the traditional criminal sense. *Id.* The district court granted the defendant's motion as to two of the three subpoenas at issue, based on its finding that the Fourth Amendment required the DEA to apply for a criminal warrant with its higher standard of probable cause because the primary purpose of the searches was to gather evidence of a crime. 690 F.2d at 73.

The Sixth Circuit reversed, holding that, like the mining, firearms and liquor industries, the pharmaceutical industry is a pervasively regulated industry. 690 F.2d at 75. The court held that the warrant in question, which was issued before any commitment to criminally prosecute the defendant, was valid because it had been issued upon a showing of "administrative probable cause." 690 F.2d at 75. *See also United States v. Jamieson–McKames Pharmaceuticals, Inc.*, 651 F.2d 532 (8th Cir.1981) cert. denied, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *United States v. Schiffman*, 572 F.2d 1137 (5th

---

**4.** 21 U.S.C.A. § 880 authorizes the Attorney General or her designees to enter certain premises for the purpose of "inspecting, copying, and verifying the correctness of records, reports, or other documents required to be kept or made under the Controlled Substances Act." 18 U.S.C.A. § 801 *et seq.* (West 1981 & Supp.1999).

Cir.1978). In 1992, the Sixth Circuit, in an unpublished opinion, extended the reasoning of *Acklen* to apply to the issuance of an administrative subpoena to a pharmacist by FBI agents pursuant to 21 U.S.C.A. § 876.[5] *United States v. Rogers,* 976 F.2d 734 (6th Cir.1992).

Furthermore, the Supreme Court has found that even the weaker probable cause standard applicable to administrative searches does not govern the issuance of an administrative subpoena. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Reich v. Sturm, Ruger & Co., Inc.,* 903 F.Supp. 239, 243 (D.N.H.1995). In such cases, the Court has held that the Fourth Amendment, at most, ensures that the inquiry is one the demanding agency is authorized by law to make and that the materials sought are relevant to the authorized inquiry and guards against abuse by way of too much indefiniteness or breadth in the things required to be "particularly described." *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. at 208, 66 S.Ct. 494; *United States v. Morton Salt Co.,* 338 U.S. 632, 652–53, 70 S.Ct. 357, 94 L.Ed. 401 (1950). "The gist of the protection is in the requirement, . . . that the disclosure sought shall not be unreasonable." *Walling,* 327 U.S. at 208, 66 S.Ct. 494.

■ In *Morton Salt,* the Court analogized the various administrative agencies' investigatory powers to those of the grand jury.

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*Morton Salt,* 338 U.S. at 642–43, 70 S.Ct. 357. Thus, when a court is asked to review the validity of an administrative subpoena, issued to ensure compliance with an administrative regulatory scheme, the court should limit its inquiry to determining whether the investigation is within the agency's authority, whether the subpoena is too indefinite and whether the information sought is reasonably relevant. *United States v. Comley,* 890 F.2d 539, 541 (1st Cir.1989) (quoting *EEOC v. Tempel Steel Co.,* 814 F.2d 482, 485 (7th Cir.1987)).

Nonetheless, the Supreme Court has placed limits on the use of administrative warrants and subpoenas in criminal investigations. "The deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts. The preliminary stages of a criminal prosecution must be pursued in strict obedience to the safeguards and restrictions of the Constitution and laws of the United States." *Abel v. United States,* 362 U.S. 217, 226, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). In *Michigan v. Tyler,* the Court held that once evidence of arson was discovered in the course of a fire scene investigation, investigating officials needed a warrant based upon a showing of "probable cause" in the traditional criminal sense before gaining access to the scene to gather further evidence to be used in a criminal prosecution. 436 U.S. at 512, 98 S.Ct. 1942.

---

**5.** 21 U.S.C.A. § 876(a) authorizes the Attorney General or her designee to subpoena witnesses to produce records which the Attorney General finds relevant or material to an investigation of her functions under the Controlled Substance Act. 21 U.S.C.A. § 876(a) (West Supp.1999).

In *United States v. LaSalle National Bank*, the Supreme Court recognized that the use of an administrative subpoena by the Internal Revenue Service, ("IRS"), for the sole purpose of gathering evidence in a criminal prosecution would not be valid. 437 U.S. 298, 316, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). In *LaSalle*, a special agent of the IRS issued two "summonses" pursuant to 26 U.S.C.A. § 7602 to the LaSalle National Bank. The Court's limiting of the IRS's use of its summons power in this case was not based on Fourth Amendment considerations, but rather on the lack of statutory authority. 437 U.S. at 312, 98 S.Ct. 2357. The Fourth Circuit, however, has stated that a summons issued under 26 U.S.C.A. § 7602 violates the Fourth Amendment if the sole objective of the investigation is to obtain evidence for use in a criminal prosecution. *United States v. Theodore*, 479 F.2d 749, 753 (4th Cir.1973).

At least one district court has held that the use of administrative inspection warrants to conduct searches for the sole purpose of gathering evidence for a criminal prosecution violates the Fourth Amendment. *See United States v. Lawson*, 502 F.Supp. at 165–66; *but see United States v. Prendergast*, 585 F.2d 69 (3rd Cir.1978); *United States v. Goldfine*, 538 F.2d 815 (9th Cir.1976). In *United States v. Lawson*, the DEA at the request of an Assistant U.S. Attorney, used administrative inspection warrants issued under 21 U.S.C.A. § 880 on a lower standard of probable cause to gather evidence from two pharmacies for use in criminal prosecutions. *Lawson*, 502 F.Supp. at 164. Based on these facts, the district court held that the searches violated the Fourth Amendment "because they were criminal searches unsupported by a warrant based on full probable cause and were not within any of the recognized exceptions to the warrant requirement." *Lawson*, 502 F.Supp. at 165.

In *United States v. Phibbs*, 999 F.2d 1053 (6th Cir.1993), the Sixth Circuit considered the validity of the use of an administrative subpoena issued in accordance with 21 U.S.C.A. § 876 to gather evidence to be used in a criminal prosecution. The Sixth Circuit found that the defendant in *Phibbs* did not have standing to dispute the validity of the administrative subpoenas at issue because the subpoenas were not directed at the defendant himself, but rather third-party businesses in whose records the defendant had no legitimate expectation of privacy. *Phibbs*, 999 F.2d at 1077. The court did recognize that, if the purpose behind an administrative subpoena is "a quest for evidence to be used in a criminal prosecution" a full probable cause showing in the traditional criminal law sense is mandatory. *Phibbs*, 999 F.2d at 1077.

In *United States v. Harrington*, 761 F.2d 1482 (11th Cir.1985), the Eleventh Circuit held that administrative subpoenas issued pursuant to 21 U.S.C.A. § 876 were valid even though they were issued post-indictment. The Eleventh Circuit's decision turned on the fact that the subpoenas were not issued to the indicted individuals, but rather third parties. 761 F.2d at 1485. *See also United States v. Hossbach*, 518 F.Supp. 759, 766–67 (E.D.Pa.1980) (administrative subpoenas under 21 U.S.C. § 876 may be used in furtherance of a purely criminal investigation when issued to third parties and not targeted individuals). In *United States v. Weingarden*, 473 F.2d 454, 459 (6th Cir.1973), the Sixth Circuit recognized that the reason broad subpoena powers have been given to administrative agencies and not the prosecutorial Justice Department lies in our country's grand jury system. "Broad investigatory, inquisitory and subpoena powers were given to that body of citizens drawn from the community [the grand jury]; like powers were not intended to be in the hands of the prosecutors of crime." *Weingarden*, 473 F.2d at 459, n. 9.

Yet this case involves an instance where Congress has done just that—given the federal government's chief prosecutor

broad investigatory, inquisitory subpoena powers. *See* 18 U.S.C.A. § 3486. Powers which may be used only in furtherance of investigating criminal offenses. *Anderson,* 31 F.Supp.2d at 941, n. 3. It is, indeed, difficult to reconcile the legal precedent which upholds the grant of broad investigatory powers to the Attorney General and other administrative agency heads in civil enforcement schemes with the courts' expressions of disfavor of the use of these same investigatory powers in furtherance of purely criminal investigations. This is especially true when you consider that many of the cases which have upheld broad grants of administrative investigatory powers have recognized that these powers are being used to discover information which ultimately will serve as evidence in criminal prosecutions. See *Hyster Company v. United States,* 338 F.2d 183, 186 (9th Cir.1964). In making this reconciliation, the court recognizes that this case and other similar cases represent a clear clash of the legitimate public interest of combating health care fraud with the legitimate private interest against unreasonable government intrusions. *See United States v. First National Bank of Fort Smith, Arkansas,* 173 F.Supp. 716, 721 (W.D.Ark.1959). "Insofar as circumstances permit, both must be served if justice is to prevail." *Id.*

Having said all this, the undersigned returns to the Supreme Court's language in *Walling,* which states that the "gist" of the matter, the true issue to be decided, is whether the disclosure sought is unreasonable. 327 U.S. at 208, 66 S.Ct. 494. After all, the Fourth Amendment protects against only "unreasonable" searches and seizures. *Hyster Company,* 338 F.2d at 186. In determining the reasonableness of the subpoenas at issue in this case, the court should consider not only whether the inquiry is one the Attorney General is authorized to make and whether the materials sought are relevant to that inquiry, *Walling,* 327 U.S. at 208, 66 S.Ct. 494, but also the need for the

materials, the movants' expectation of privacy in the materials, the breadth of the request, the time period covered by it, the particularity with which the materials are described and the burden imposed by compliance. *See United States v. International Business Machines, Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y.1979). "When these elements are balanced and assessed in the context of an individual subpoena, 'prior decisions are of limited value.' The facts and circumstances of the instant situation control." *Id.* (citations omitted).

There is no dispute in this case that the Attorney General or her designees were authorized to issue these subpoenas. The language of 18 U.S.C.A. § 3486 is clear and unambiguous. There also is no dispute as to whether the subpoenas describe the materials·requested with particularity. While the breadth of the materials requested is great, the language of subpoenas with regard to the materials sought is clear and definite. I also find nothing unreasonable in the time period covered by these subpoenas, in light of the applicable statute of limitations. *See* 18 U.S.C.A. § 3282.

The more difficult questions to be resolved here are whether all of the materials requested are relevant to the authorized inquiry, whether the movants' expectation of privacy in certain items requires a higher showing with regard to those items and whether the breadth of the items sought imposes an undue burden on the movants. As stated above, 18 U.S.C.A. § 3486 authorizes the issuance of subpoenas to gather information to be used in investigating certain federal health care offenses. 18 U.S.C.A. § 3486(a). These offenses are primarily offenses involving false claims and health care fraud. *See* 18 U.S.C.A. § 24(a). Therefore, I find that the items described in item No. 1 of Attachment A of each of these subpoenas, which include patient treatment and billing records, and the items described in item No. 4 of Attachment A of each of these

subpoenas, which include documents regarding claim filing procedures and record retention, are relevant to the authorized inquiry. Likewise, I find that the items described in item No. 3 of Attachment A of these subpoenas are relevant insofar as this item requests the financial records of Dr. Bailey's practice and the business records of Family Health Care and its two clinics. I also find that the movants have little expectation of privacy in these business records. While I question the relevance to the authorized inquiry of the items described in items Nos. 2 and 5 of Attachment A, I recognize that 18 U.S.C.A. § 3486 allows production of documents which "may be relevant." 18 U.S.C.A. § 3486(a)(1)(A). This fact, coupled with the fact that there can be little, if any, expectation of privacy in records regarding the acquisition and disbursement of controlled substances, justifies the production of these documents.

I do not find that the use of these subpoenas is proper to obtain Dr. Bailey's personal financial records from Dr. Bailey. In reaching this determination, I recognize that these documents "may be relevant" to the U.S. Attorney's investigation. *See* 18 U.S.C.A. § 3486(a)(1)(A). I also recognize, however, that Dr. Bailey has a greater expectation of privacy in his personal financial records than those of his practice. Nevertheless, perhaps the most important consideration in reaching my determination is the government's admission that Dr. Bailey is the target of this criminal investigation. Based on this fact, coupled with the above-cited cases which clearly disfavor use of administrative subpoenas in gathering evidence against a target of a criminal investigation, I hold that the government should not be allowed to use an administrative subpoena to obtain personal documents from a targeted individual without a showing of probable cause in the traditional criminal sense. *See Phibbs,* 999 F.2d 1053. I also have considered the government's argument that it may gain access to these documents through a grand jury subpoena duces tecum. While that may be true, that is not the case before this court. The mere fact that the government may have other techniques available by which to gain access to these documents does not validate its use of this procedure to gather these documents in this case.

With regard to the movants' argument that the breadth of these subpoenas imposes an undue burden, the Supreme Court has held that the Fourth Amendment protects witnesses against subpoenas which are unreasonable because they are too broad or too onerous. In *Hale v. Henkel,* 201 U.S. 43, 77, 26 S.Ct. 370, 50 L.Ed. 652 (1906), the Supreme Court vacated a subpoena duces tecum because it found that it was so broad that compliance would have impaired the witness' ability to carry on his business. *See also In re Grand Jury Subpoena,* 175 F.3d 332 (4th Cir.1999),; *Fraser v. United States,* 452 F.2d 616, 619 (7th Cir.1971). Likewise, the Fourth Circuit has refused to enforce administrative subpoenas which it has found to be overbroad in scope. *United States v. Theodore,* 479 F.2d at 754. In *Theodore,* the Fourth Circuit invalidated a summons issued by the IRS under 26 U.S.C. § 7602. The court stated:

> A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought.... The Government cannot go on a "fishing expedition" through appellant's records, ... and where it appears that the purpose of the summons is "a rambling exploration" of a third party's files, it will not be enforced.

*Theodore,* 479 F.2d at 754 (citations omitted); *see also Oxford Charter Corporation v. United States,* 1993 WL 268507 (M.D.Fla. April 23, 1993); *United States v. Dauphin Deposit Trust Company,* 385 F.2d 129, 131 (3rd Cir.1967) cert. denied *Dauphin v. United States,* 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968) (recipient of IRS summons protected against imposi-

tion of unreasonable and excessive financial burden); *U.S. v. First National Bank,* 173 F.Supp. 716, 718 (IRS summons which required bank to incur $30,000.00 to comply was unreasonable).

In this case, the U.S. Attorney has offered a compromise schedule for production of the requested documents, in an effort to minimize the burden of compliance on the movants. Under this schedule, the movants would first be requested to produce the items described in item Nos. 1, 2, 3 and 5 of Attachment A of these subpoenas, with the exception of any patient files. After reviewing these documents, the U.S. Attorney, if necessary, would request specific patient files and other items described in item No. 4 of these subpoenas. Furthermore, the movants could schedule a hearing before the court at any time they believed the production had become unreasonable or oppressive. This would alleviate an immediate need for the movants to incur any time and expense in retrieving and photocopying patient files. Therefore, I find compliance with these subpoenas as set forth in the schedule proposed by the U.S. Attorney to be reasonable.

▌ With regard to the U.S. Attorney's argument that, absent specific statutory authority, the court cannot apportion the cost of complying with these subpoenas, I am persuaded by the legal reasoning of the district court in *In re Grand Jury Investigation,* 459 F.Supp. 1335 (E.D.Pa.1978), that this court does have the authority to apportion the costs of complying with these subpoenas, regardless of whether the civil or criminal rules of procedure govern these proceedings. In that case, the court, in reviewing a motion to quash a grand jury subpoena duces tecum, noted that Federal Rules of Criminal Procedure Rule 17(c) provides that a court may quash or modify a subpoena if compliance would be unreasonable or oppressive, 459 F.Supp. at 1339 (citing FED.R.CRIM.P. 17(C)). The court stated:

Although Rule 17(c) does not specifically empower the court to order the government to bear the cost of compliance, the Advisory Committee Note to Subdivision (c) suggests that the criminal rule is substantially the same as Rule 45(b) of the Federal Rules of Civil Procedure. Civil Rule 45(b) provides that the court "may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things."

459 F.Supp. at 1339. I also note that 18 U.S.C.A. § 3486(c) provides for court review of subpoenas issued pursuant to § 3486(a).

Nonetheless, most of the information presented to the court by the movants regarding the burden imposed by these subpoenas dealt with the production of patient files. Since the U.S. Attorney has agreed not to seek any patient files currently, I do not address the issue of whether the U.S. Attorney will be required to bear a portion of the costs of production, if, and when, these costs become burdensome to the movants.

Based on the above-stated reasons, I will grant the movants Motions to Quash insofar as these subpoenas seek production of Dr. Bailey's personal financial records. Otherwise, I will deny the Motions to Quash.

**B. Movants' Fifth Amendment challenge to the subpoenas**

▌ The Fifth Amendment privilege against self-incrimination is a purely personal one which cannot be invoked by or on behalf of a corporation or professional association. *Theodore,* 479 F.2d at 753. *See Hale v. Henkel,* 201 U.S. 43, 69, 26 S.Ct. 370, 50 L.Ed. 652 (1906). It also is settled that an officer of a corporation cannot refuse to produce corporation records in his possession based upon a claim that the records either will or may incrimi-

nate him or the corporation. *Oklahoma Press Publishing Company v. Walling*, 327 U.S. 186, 205, 66 S.Ct. 494, 90 L.Ed. 614 (1946). In this case, three of the four subpoenas issued are directed to a corporate health care provider, Family Health Care, and two health care clinics it owns. Therefore, the court will deny Family Health Care's motion to quash these subpoenas based on Fifth Amendment grounds.

■ With regard to Dr. Bailey's assertion of his privilege against self-incrimination, I note that each of these four subpoenas is directed to Dr. Bailey *or* the custodian of records of Dr. Bailey's practice and Family Health Care and its two clinics. Therefore, Dr. Bailey is not required to appear and offer any testimony regarding these subpoenas. The Fifth Amendment protects individuals from compelled self-incrimination. *U.S.v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 396, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Since these subpoenas do not require Dr. Bailey to appear and restate, repeat or affirm the contents of these documents, the court also will deny Dr. Bailey's Motion to Quash these subpoenas on Fifth Amendment grounds.

### C. Movants' assertion of patients' privacy rights to challenge the subpoenas

■ This challenge to these subpoenas requires the weighing of the public interest in combating health care fraud against the individual's interest in protecting the privacy of his medical records.[6] While the U.S. Attorney argues that "there is no real expectation of privacy in patient records," numerous courts have found to the contrary. *See Whalen v. Roe*, 429 U.S. 589, 598–99, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3rd Cir.1980); *Shoemaker v. Handel*, 608 F.Supp. 1151, 1159

(D.N.J.1985). In *In re Search Warrant (Sealed)*, 810 F.2d 67 (3rd Cir.1987), the Third Circuit considered a similar challenge to a search warrant used to seize patient records from a physician being investigated for possible insurance fraud. The Third Circuit recognized that privacy rights exist with regard to the compelled disclosure of medical records, and that these rights must be balanced against the government's interest in securing the requested information. 810 F.2d at 71–72. In *Westinghouse*, the Third Circuit listed a number of factors which should be considered by a court in deciding whether such an intrusion into individual privacy is justified. 638 F.2d at 578. These factors include:

... the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest....

638 F.2d at 578.

In this case an express statutory mandate and articulated public policy exists— the need to combat health care fraud. *See* Pub.L. 104–191. Also, as the Supreme Court noted in *Morton Salt*, 338 U.S. at 642–43, 70 S.Ct. 357, the public interest would be greatly frustrated if the government, in furtherance of its investigation, could not get information from "those who best can give it." While the information requested is of a highly personal nature, *see Westinghouse*, 638 F.2d at 577, it appears that the statute authorizing disclosure, 18 U.S.C.A. § 3486, provides some safeguards against further disclosure. 18 U.S.C.A. § 3486(e). In addition to these

---

**6.** The U.S. Attorney has not challenged the health care providers' standing to assert the privacy rights of patients. *See In re Search*

*Warrant (Sealed)*, 810 F.2d 67, 69 (3rd Cir. 1987).

safeguards, I believe the personal nature of the information sought justifies this court to prohibit the disclosure of this information to anyone other than to the employees and representatives of the Department of Justice in furtherance of its investigation of certain health care offenses and to a grand jury or court in any subsequent proceeding which might arise as a result of this investigation. With this safeguard, and the U.S. Attorney's proposal to seek only those patient files which remain relevant to his investigation after his review of the initial production, I hold that the public interest in combating health care fraud outweighs the individual's interest in protecting the confidentiality of these records. Therefore, I will deny the movants' Motions to Quash on this ground.

### III. Conclusion

Based on the above stated reasons, I will grant the Motions to Quash in part and deny the Motions in part. An appropriate order shall be entered.

The Clerk shall certify a copy of this Memorandum Opinion to all counsel of record.