asserted by a plaintiff may not be based on the improper motives of an individual agency employee, but instead must be founded upon evidence that the agency itself, in an institutional sense, acted in bad faith when it served the subpoena. *LaSalle*, 437 U.S. 298, 314-16 (1978).

Doe asserts that, because this is the third subpoena served to him in two years, it constitutes harassment. While we are troubled by the fact that the government, after two years of investigation and two subpoenas, has now imposed yet another document request on Doe, Doe has proffered no evidence, nor is there any in the record, that would support a conclusion that the DOJ was motivated by an improper purpose when issuing this subpoena. Doe has not met his "heavy" burden of showing institutional bad faith in this case. *LaSalle*, 437 U.S. at 316.

### III. CONCLUSION

Thus, because all the requirements for enforcing an administrative subpoena have been met in this case, we **AFFIRM** the district court's decision enforcing the administrative subpoena.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0195P (6th Cir.)
File Name: 01a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: ADMINISTRATIVE SUBPOENA

JOHN DOE, D.P.M.,
 *Petitioner-Appellant,*

  *v.*

UNITED STATES OF AMERICA,
 *Respondent-Appellee.*

No. 00-4352

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-MC-00053—Patricia A. Gaughan, District Judge.

Argued: April 27, 2001

Decided and Filed: June 14, 2001

Before: SILER and MOORE, Circuit Judges; STAGG, District Judge.[*]

---

[*]The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

—————————————

**COUNSEL**

**ARGUED:** Leonard W. Yelsky, YELSKY & LONARDO, Cleveland, Ohio, for Appellant. Subodh Chandra, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Leonard W. Yelsky, YELSKY & LONARDO, Cleveland, Ohio, for Appellant. Subodh Chandra, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

——————————

**OPINION**

——————————

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant John Doe ("Doe" or "petitioner") appeals the district court's order denying his motion to quash an administrative subpoena issued by the Department of Justice pursuant to a health care fraud investigation. Doe, a podiatrist, is under investigation for an alleged kickback arrangement with two medical testing laboratories. The administrative subpoena, issued pursuant to the Department of Justice's authority under § 248 of the Health Insurance Portability & Accountability Act ("HIPAA"), ordered Doe to turn over a number of documents, including: records relating to his professional education and ethical training; personal and business financial records; records evidencing any asset transfers by Doe to his children; and various patient files.

We **AFFIRM** the district court's order denying Doe's motion to quash the administrative subpoena and compelling compliance therewith.

## I. BACKGROUND

John Doe, D.P.M., a podiatrist operating a clinic in the Cleveland metropolitan area, is under investigation by the FBI and a federal grand jury for an alleged "kickback"

presumably, the source of that money was his health-care business." J.A. at 19 (DOJ Letter to Doe's Att'y).

As his attorney acknowledged at oral argument, Doe's children are minors. Just as Doe could easily commingle assets between his personal and business financial accounts, so also could he transfer ill-gotten gains into the personal accounts of his unsuspecting minor children. Because the government has been careful to avoid a sweeping exploration of Doe's children's assets, we hold that the likely relevance of these documents to the government's health care fraud investigation outweighs the children's heightened privacy interests in guarding this information. Doe has made no other showing of why the production of these documents would be unduly burdensome, and, assuming the final elements of the reasonable relevance test are met, we will enforce the government's narrowly tailored request for specific personal financial documents belonging to Doe's children.

Having concluded our analysis of the relevance of the requested documents to the government's health care fraud investigation, we now proceed to the remaining elements of the reasonable relevance test.

### 3. Is the Information the DOJ Seeks Already in Its Possession?

Doe does not contend that the DOJ already has in its possession the documents it seeks through this subpoena, nor is there any evidence that this is the case.

### 4. Will Enforcing the Subpoena Abuse the Court's Process?

The Supreme Court has stated that a court's process is abused where the subpoena is "issued for an improper purpose, such as to harass the [investigation's target] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. Furthermore, in *United States v. LaSalle*, the Court held that any bad faith

### c. Doe's Children's Financial Records

In addition to Doe's personal financial records, the DOJ's administrative subpoena also requested "[c]opies of recent bank and other financial records sufficient to show current location, amount, and value of all assets for any and all children of [John Doe], D.P.M., insofar as those assets were provided or derived from individual or jointly held assets of John Doe, D.P.M." J.A. at 11 (Admin. Subpoena). The government requests these documents for many of the same reasons it requested Doe's personal and business financial documents: to determine the degree to which Doe profited from this potentially illegal activity, and the assets that may be forfeitable as a result. Appellee's Br. at 29.

We are more troubled by the government's request for personal financial documents of the children of the target of a health care fraud investigation. Indeed, in other administrative subpoena cases, the U.S. Courts of Appeals for the Second and Ninth Circuits have recognized that family members of an investigation's target "have a greater reasonable expectation of privacy in their personal financial affairs than do those individuals who do participate in such matters." *McVane*, 44 F.3d at 1137 (quotation omitted); *see also Garner*, 126 F.3d at 1144-45.

Although we are more reluctant to enforce this aspect of the administrative subpoena, we believe that it is sufficiently narrowly-tailored to pass the reasonable relevance standard. The DOJ's request for Doe's children's financial documents explicitly limits its reach to only those records concerning assets "provided or derived from individual or jointly held assets of [John Doe], D.P.M." J.A. at 11 (Admin. Subpoena). Further evidence of the government's efforts to confine the scope of this portion of the subpoena can be found in correspondence between the government and Doe's attorney following the issuance of the subpoena, in which the government stated that "the request concerning [Doe's] children's assets is limited to information relating to assets/moneys where [Doe] was the source, and where,

arrangement with two medical testing laboratories. More specifically, it is alleged that Doe received payments from these labs for referring his patients to them for medically unnecessary vascular and electrodiagnostic tests. The government alleges that these kickbacks were disguised as rental payments that the labs made to Doe for the periodic use of one room in his clinic. The government has obtained documents through previous subpoenas evidencing lease agreements with the labs that show that, in less than three years, approximately $10,000 was paid to Doe for the use of a single room in his clinic for a few hours each month. By contrast, Doe himself only paid about $16,800 in rent for the entire office over that same period of time. The government claims that, based on information discovered thus far, Doe may have aided one of the laboratories in submitting false claims approximating $150,000 to various health care benefit programs. These programs paid approximately $57,000 on the claims.

The government also has evidence from independent medical experts stating that one of the labs to which Doe referred patients was performing a grossly excessive amount of electrodiagnostic testing. Furthermore, the government has evidence that one of the medical conditions for which Doe referred his patients for further testing could not have been accurately diagnosed by this lab's technicians, as it required medically invasive and non-routinized testing, testing which the Ohio State Medical Board has concluded may not, under Ohio law, be performed by technicians.

Pursuant to the DOJ's investigation, a series of subpoenas were issued to Doe requesting various documents. In the first subpoena, issued August 5, 1998, the DOJ requested lease agreements between Doe and the labs, any payments made to Doe by any medical service provider, including laboratories, and information on tests performed on patients by any medical service provider. The second subpoena, issued May 25, 1999, requested information on various patients. The third subpoena, an administrative subpoena and the subpoena at issue in this case, was ordered pursuant to the

DOJ's authority under § 248 of the HIPAA, which allows the Attorney General or her designee to issue subpoenas requiring the production of records "which may be relevant to" a "Federal health care offense" investigation.    18 U.S.C. § 3486(a)(1)(A).[2]

The administrative subpoena ordered Doe's records custodian to turn over a number of documents by August 28, 2000.    The documents requested were divided into the following nine categories:

1)    all professional journals, magazines, and newsletters subscribed to or received by Doe from January 1990 through March 1998;

2)    copies of recent bank and other financial records showing the current location, amount, and value of all Doe's personal and health care-related business assets, whether jointly or individually held;

3)    copies of recent bank and other financial records showing the current location, amount, and value of all Doe's children's assets insofar as those assets were provided or derived from the individual or jointly held assets of Doe;

4)    all documents and patient files evidencing Doe's referral of patients for certain electrodiagnostic tests after April 2, 1998;

5)    all documents and patient files after January 1, 1993 evidencing Doe's referral of patients to a specific

---

[2]On December 19, 2000, several months after the subpoena was issued in this case, the Presidential Threat Protection Act of 2000, Pub. L. No. 106-544, 114 Stat. 2715, altered the precise statutory language authorizing the Attorney General to issue administrative subpoenas pursuant to federal health care investigations. Although we apply § 3486 as it existed at the time the subpoena was issued, we note that the changes made in the language of § 3486 would not alter the ultimate outcome in this case.

appears to be the case with Doe, can easily transfer assets from business accounts to personal accounts, arguably even more readily than the corporate officers whose personal financial documents were requested pursuant to the FDIC and RTC subpoenas.  To apply a more stringent standard to Doe's personal financial records in this case, in light of the ease with which personal and corporate assets could be commingled and shuttled from one account to another, would be inconsistent with the Congressional mandate given the Attorney General in § 3486 to uncover information relevant to its health care fraud investigation.

Applying the reasonable relevance standard to the government's requests for Doe's personal and business financial records, we again hold that the likely relevance of these documents outweighs the burden imposed on Doe in producing them.  Doe has not explained why producing documents related to this portion of the subpoena would burden him, nor has he proffered any argument to refute the government's explanation of the documents' relevance.  So long as the remaining elements of the reasonable relevance test are met, we will enforce this aspect of the government's administrative subpoena.[6]

---

[6]Even if we imposed a higher standard than reasonable relevance for the request of Doe's personal financial documents, we are confident that this standard would be met in this case.  The most difficult standard for subpoenaing personal financial records announced by any court of appeals was that in the withdrawn First Circuit decision in *Parks*, in which the court held that an agency would have to show "a reasonable suspicion of wrongdoing[.]" *Parks*, 1995 WL 529629, at *8.  In this case, the DOJ has articulated a reasonable suspicion of wrongdoing on the part of Doe.  The government has evidence of medical testing laboratories making unusual rental payments to Doe, as well as evidence from independent medical experts stating that one of the labs to which Doe referred patients was performing excessive and unnecessary electrodiagnostic testing.  Thus, even under a standard requiring a reasonable suspicion of wrongdoing before a subpoena can be enforced, the government has made a sufficient showing to request Doe's personal financial records.

Several courts have recognized that heightened privacy interests are at stake when dealing with personal, as opposed to corporate, financial records. *See FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) ("When personal documents of individuals, as contrasted with business records of corporations, are the subject of an administrative subpoena, privacy concerns must be considered."). Despite these heightened privacy concerns, the U.S. Courts of Appeals for the Second, Ninth, and District of Columbia Circuits have held that the same standard of reasonable relevance applied to corporate records when requested pursuant to the administrative subpoena power granted to the FDIC and the now-defunct Resolution Trust Corporation ("RTC") to investigate fraudulent asset transfers should also be applied to requests for the private financial records of corporate officials. *See FDIC v. Garner*, 126 F.3d 1138, 1143-44 (9th Cir. 1997); *In re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995); *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 947-48 (D.C. Cir. 1994); *see also* Katherine Scherb, Comment, *Administrative Subpoenas For Private Financial Records: What Protection For Privacy Does The Fourth Amendment Afford?*, 1996 Wis. L. Rev. 1075, 1085-90. *But see Parks v. FDIC*, No. 94-2262, 1995 WL 529629, at *8 (Sept. 13, 1995), *withdrawn from publication following grant of reh'g en banc* (holding that FDIC must "articulate a reasonable suspicion of wrongdoing" before a subpoena for personal financial records can be enforced).[5]

We agree with the reasoning of these circuits applying the reasonable relevance standard to subpoenas requesting the personal financial documents of corporate officials, and believe that applying the reasonable relevance standard is particularly appropriate in light of the facts of this case. Doctors operating their own medical clinics or practices, as

---

[5]Unlike his personal financial records, Doe has no protected Fourth Amendment interest in any records held by his bank, as they are "the business records of the bank[]" rather than documents over which he can assert ownership or possession. *United States v. Miller*, 425 U.S. 435, 440-43 (1976).

medical testing laboratory for certain diagnostic ultrasound tests;

6)  complete academic transcripts and records from medical or podiatric school, as well as any other post-graduate training;

7)  all documents concerning the extent of Doe's continuing medical education, including a list and description of courses taken, credit hours earned, and any materials provided in those courses;

8)  all documents concerning ethics, professional responsibility, and medical-billing issues in Doe's custody; and

9)  retained copies of federal, state, and local tax returns both for Doe and any of his businesses from 1993 to the present.

Joint Appendix ("J.A.") at 11 (Admin. Subpoena). Doe did not turn over these documents. Instead, on August 29, 2000, Doe filed in the district court a motion to quash the subpoena, or, in the alternative, to issue a protective order. In this motion, Doe called the government's latest document request "unreasonably burdensome" and questioned its relevance. J.A. at 6-7 (Mem. in Supp. of Mot. to Quash).

On October 10, 2000, following the government's combined motion in opposition to Doe's motion to quash and countermotion to compel Doe to comply with the subpoena, the district court denied Doe's motion to quash the subpoena and granted the government's motion to compel compliance with the subpoena. The district court denied the motion to quash because "the subpoena was issued within the authority of the U.S. Attorney General, the records sought [were] relevant to the government's health-care fraud investigation, the materials [were] not already in the possession of the Department of Justice, and [because the] Court's process would not be abused by enforcement of the subpoena." J.A. at 56 (Dist. Ct. Order Den. Mot. to Quash).

Doe now appeals the denial of his motion to quash the administrative subpoena to this court.

## II.   ANALYSIS

We first take note of our jurisdiction to hear this appeal. Although a party served with a subpoena typically cannot appeal the denial of a motion to quash the subpoena until he has resisted the subpoena and been held in contempt, the Supreme Court has treated subpoenas issued by government agencies differently. In the case of administrative subpoenas, parties may immediately appeal district court orders enforcing these subpoenas, as the Supreme Court has deemed them to be "self-contained, so far as the judiciary is concerned[.]" *Cobbledick v. United States*, 309 U.S. 323, 330 (1940); *see also* 19 James Wm. Moore et al., Moore's Federal Practice § 202.11[2][c].

Our review of the district court's interpretation and application of 18 U.S.C. § 3486, as well as the case law relating to enforcement of administrative subpoenas, is de novo. *United States v. Markwood*, 48 F.3d 969, 975 (6th Cir. 1995).

### A.   The Government's Motion to Close Oral Argument to the Public

Before proceeding to an analysis of the administrative subpoena at issue in this case, we briefly note that, ruling from the bench, we denied the government's motion to conduct oral argument in a closed courtroom in this case. The government, concerned about revealing sensitive matters that could jeopardize its ongoing criminal investigation of other medical professionals and service providers, filed a motion, in advance of oral argument and unopposed by Doe's counsel, to close oral argument to the public.

While we deliberate in private, we recognize the fundamental importance of "issu[ing] public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges

the subpoena to reach an accommodation with the government is a condition to finding the subpoena overly broad or oppressive). Nor has Doe given us anything but a general and conclusory statement as to why this request constitutes an undue burden. Although Doe's arguments regarding the burden of this subpoena are rather general and conclusory, we do note that the government's investigation of Doe has gone on for more than two years, and that this is the third subpoena requesting documents from Doe issued over this time. While we do not believe that the length of the investigation or the number of subpoenas previously issued to Doe make any further request for documents unreasonable in this case, such factors may be taken into account when deciding whether an administrative subpoena is unduly burdensome.

In sum, we believe that the strong likelihood of the requested documents' relevance to the government's health care fraud investigation outweighs any burden imposed on Doe in producing these documents. Accordingly, this aspect of the government's administrative subpoena will be enforced so long as the final two elements of our administrative subpoena test are met.

### b.   Doe's Personal and Business Financial Records

The government's subpoena also requested "[c]opies of recent bank and other financial records sufficient to completely show current location, amount, and value of all assets for [John Doe], D.P.M., and/or his health care related businesses," as well as copies of Doe's business and personal tax returns from 1993 to the present. J.A. at 11 (Admin. Subpoena). The government asserts that these documents are relevant because they go to show "[Doe]'s profit motive for alleged criminal activity, the degree to which [Doe] profited from illegal activity, and the assets that may be forfeitable as a result of criminal activity." Appellee's Br. at 29. Again, Doe offers no specific reason why the production of these documents would be overly burdensome.

relating to Doe's medical training will aid it in learning the extent to which Doe may have known that the tests to which he was subjecting his patients were medically unnecessary.

The government, through its proffered reasons for requesting documents relating to Doe's professional education and ethical training, has sufficiently shown how these documents are relevant to its underlying health care fraud investigation. The extent to which Doe knew that these tests were medically unnecessary and the extent to which he knew that kickback arrangements were illegal or unethical are not ancillary or unimportant issues in an investigation of possible health care fraud. Thus, this request falls within the broad concept of relevance intended by Congress in § 3486.

As this circuit has stated, however, this court must weigh against the relevance of the requested material the burden that would be placed on Doe in producing it. *Ford Motor*, 26 F.3d at 47. The extent of Doe's argument regarding the burden imposed by this request is his statement that he "would have to literally put his life on hold and search for papers and documents which stretch *ten years* into the past[,] [w]ell beyond any statute of limitations that the Government may apply to any alleged health care offenses." Appellant's Br. at 21. Of the four categories of documents currently under consideration, however, only one, the request for all professional journals, magazines, and newsletters subscribed to or received by Doe from January 1990 through March 1998, has the potential to pose any meaningful burden on Doe. Nevertheless, Doe has made no attempt to reach a reasonable accommodation with the government regarding this aspect of the subpoena, an effort the Supreme Court has suggested should be expected before a court is willing to hold an administrative subpoena overly burdensome.[4] *Morton Salt*, 338 U.S. at 653; *see also In re Subpoena Duces Tecum*, 228 F.3d at 351 (holding that an effort by the party contesting

---

[4]For example, in an attempt to reach a reasonable accommodation with the government regarding this request, Doe could have simply offered to produce a list of all professional journals he regularly received.

by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). To the extent the government believes that it must reveal sensitive information to the court as part of its argument, it can "submit arguments in writing under seal in lieu of the in camera oral argument." *New York Times Co. v. United States*, 403 U.S. 944 (1971).

## B.  Background on the Enforcement of Administrative Subpoenas

As noted in its heading, 18 U.S.C. § 3486 authorizes the Attorney General or her designee to issue "[a]dministrative subpoenas in [f]ederal health care investigations[.]" Doe claims that, by enforcing the DOJ's administrative subpoena in this case, his Fourth Amendment right to be free from unreasonable searches and seizures has been violated.

This circuit has noted that a district court plays only a limited role in the enforcement of an administrative subpoena. *Markwood*, 48 F.3d at 976. All the district court must do in deciding whether to enforce an administrative subpoena is 1) determine whether the administrative agency to which Congress has granted the subpoena power, in this case the DOJ, has satisfied the statutory prerequisites to issuing and enforcing the subpoena, and 2) determine whether the agency has satisfied the judicially created standards for enforcing administrative subpoenas. *Id*. at 976-77. We first turn to the judicially created standards that must be met for an administrative subpoena to be enforced.

In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), one of the Supreme Court's first major cases addressing the constitutionality of an administrative subpoena under the Fourth Amendment, the Court created standards for the enforcement of administrative subpoenas that are still used today. In *Oklahoma Press*, the Court held that a subpoena duces tecum for corporate records issued by the

Department of Labor would comply with the Constitution so long as the demand for documents

> is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in describing the place to be searched, and the persons or things to be seized . . . comes down to [whether] specification of the documents to be produced [is] adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, . . . this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.

*Id.* at 209 (footnote and internal quotation marks omitted). Put more succinctly in *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950), another case involving a request for corporate documents, the Court stated that an agency's request for documents should be approved by the judiciary so long as it "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." In other words, the agency request must be reasonable.

It is from the last major Supreme Court case on the issue, *United States v. Powell*, 379 U.S. 48 (1964), that the basic language of the "reasonable relevance" test employed by this circuit emanates. In *Powell*, the Internal Revenue Service ("IRS"), suspecting tax fraud, issued an administrative summons requesting corporate tax records from the president of a corporation. Powell argued that the IRS could not use its summons power to require production of the records unless it could proffer some grounds for its suspicion that a fraud had been committed. The Court disagreed, however, stating that the IRS need make no showing of probable cause to suspect tax "fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process[.]" *Id.* at 51.

approach of balancing the likely relevance of documents against the burden of their production clearly appears applicable in this case. With this background in mind, we now turn to an analysis of the relevance of the various materials requested in this subpoena.

### a.    Documents Relating to Doe's Professional Education and the Extent of His Ethical Training

As noted earlier, of the nine categories of documents subpoenaed by the DOJ, four categories request documents relating to Doe's professional education and training regarding ethical issues. Those categories are:

1) all professional journals, magazines, and newsletters subscribed to or received by Doe from January 1990 through March 1998;

2) complete academic transcripts and records from medical or podiatric school, as well as any other post-graduate training;

3) all documents concerning the extent of Doe's continuing medical education, including a list and description of courses taken, credit hours earned, and any materials provided in those courses; and

4) all documents concerning ethics, professional responsibility, and medical-billing issues in Doe's custody.

J.A. at 11 (Admin. Subpoena).

The government claims that these documents are relevant to its investigation because they go to show Doe's intent. If it were to prosecute Doe for these alleged kickback agreements, the government states that it would have to prove that "[Doe] knew as a general matter that the concept of remuneration for referrals was somehow wrongful (whether illegal or unethical)[.]" Appellee's Br. at 27. The government further states that its request for documents

important to focus on key sources affecting levels of the underlying health care costs. Two key sources of excessive cost are medical fraud and abuse, and the current medical paperwork burden.

According to the General Accounting Office (GAO), as much as 10 percent of total health care costs are lost to fraudulent or abusive practices by unscrupulous health care providers. The GAO reports that only a small fraction of the fraud and abuse committed in the health care system is identified and dealt with. Federal funding for prevention, detection, and prosecutions of the perpetrators of health care fraud and abuse has not kept pace with the problem. Coordination of the various law enforcement agencies at the federal and state levels has been insufficient, and law enforcement agencies agree that penalties for health care fraud and abuse should be increased.

H.R. Rep. No. 104-496, at 69-70, *reprinted in* 1996 U.S.C.C.A.N. at 1869. It is safe to assume that Congress, in passing HIPAA, recognized the serious problem that health care fraud had become, and that, through this legislation, Congress was intending to strike back at this problem. Accordingly, in light of both the statutory language and legislative history of § 3486, it appears that Congress intended to give the Attorney General broad authority to conduct health care fraud investigations, thus entailing a less restricted interpretation of what records may be subpoenaed under § 3486 because they are "relevant" to a health care investigation.

While the *Ford Motor* court's decision to weigh the likely relevance of requested material against the burden of producing that material came in the context of an EEOC administrative subpoena, we did not confine our reasoning only to that type of administrative subpoena, nor is there any basis for following a different course in this case. The administrative subpoena powers under both Title VII and HIPAA are broadly defined, and the *Ford Motor* court's

A court's process is abused if the summons is "issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id*. at 58.

The *Powell* Court was concerned that requiring the IRS to show probable cause that a tax fraud had been committed would seriously hinder the agency's ability to conduct these kinds of investigations. *Id*. at 53-54. Thus, rather than probable cause, the Court held that all the IRS need show to obtain judicial enforcement of a summons is "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed[.]" *Id*. at 57-58. We still use this test today when examining administrative subpoenas. *Markwood*, 48 F.3d at 980. As this circuit has summarized, "[w]hile the court's function is neither minor nor ministerial" when deciding whether to enforce an administrative subpoena, "the scope of the issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity." *Id*. at 979 (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 872-73 (D.C. Cir.) (en banc), *cert. denied*, 431 U.S. 974 (1977); other quotations omitted).

Following *Powell* and the precedent of this circuit, we hold that the DOJ need not make a showing of probable cause to issue an administrative subpoena under 18 U.S.C. § 3486, nor does petitioner argue for such a standard on appeal. In *In re Subpoena Duces Tecum*, 228 F.3d 341, 347-49 (4th Cir. 2000), the U.S. Court of Appeals for the Fourth Circuit was the first circuit court to address administrative subpoenas issued under § 3486. As the Fourth Circuit explained, whereas the Fourth Amendment mandates a showing of probable cause for the issuance of search warrants, subpoenas are analyzed only under the Fourth Amendment's general

reasonableness standard. *Id*. at 347-48. One primary reason for this distinction is that, unlike "the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant[,]" the reasonableness of an administrative subpoena's command can be contested in federal court before being enforced. *Id*. at 348.

Unlike the Fourth Circuit, the district court in *In re Subpoena Duces Tecum* was more troubled by the notion of simply applying the reasonable relevance standard to subpoenas issued under § 3486. *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d 726, 733-36 (W.D. Va. 1999). The district court discussed several cases, including one from this circuit, which it believed weighed in favor of applying a probable cause standard to administrative subpoenas used to further criminal, as opposed to civil, investigations.[3] We believe, however, that these cases are distinguishable from the facts in this case.

In *Abel v. United States*, 362 U.S. 217, 226 (1960), and *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994), two cases cited by the district court in *In re Subpoenas Duces Tecum*, both the Supreme Court and this circuit spoke in favor of using the probable cause standard when analyzing administrative agencies' efforts to obtain information pursuant to a criminal investigation. In both these cases, however, the courts were addressing administrative searches, as opposed to administrative subpoenas. *Abel*, 362 U.S. at 226; *Phibbs*, 999

---

[3] Based, in part, on these cases, the district court refused to enforce the government's administrative subpoena insofar as it sought the personal financial records of the target of the health care fraud investigation. *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d at 736. The district court did enforce, however, the remainder of the government's subpoena. On appeal to the U.S. Court of Appeals for the Fourth Circuit, the government did not cross-appeal the district court's denial of its request to subpoena the target's personal financial records. Thus, the Fourth Circuit did not address the issue. Nevertheless, at no time did the court of appeals indicate that anything but a test of reasonableness should be applied to administrative subpoenas issued pursuant to § 3486.

term "relevant" in the statute authorizing the EEOC to issue administrative subpoenas had been construed broadly so as to allow "the Commission access to virtually any material that might cast light on the allegations against the employer." *Ford Motor*, 26 F.3d at 47 (quotation omitted). We noted that this broad interpretation of relevance was influenced by Congress's intent that the EEOC have the authority to demand documents that it deemed relevant to its investigation. We stated, however, that, while relevance should be viewed broadly, because the court was given the duty of reviewing the agency's decision to issue a subpoena, it did not simply have to accept the agency's opinion as to what is and is not relevant to agency investigations. Ultimately, we decided that, in reviewing whether an administrative subpoena should be enforced, we would "weigh the likely relevance of the requested material to the investigation against the burden . . . of producing the material." *Id*.

As with the EEOC's subpoena power, it appears clear, both from the language of the statute and from Congress's intent in enacting HIPAA, that the DOJ's subpoena power in investigating federal health care offenses is meant to be broad. Section 3486 authorizes the Attorney General or her designee to subpoena any records "which *may be relevant*" to an authorized investigation, thus illustrating the substantial scope of the subpoena power Congress intended to give to the Attorney General. 18 U.S.C. § 3486(a)(1)(A) (emphasis added).

Aside from the statutory language, other evidence of Congress's intent to grant the Attorney General a broad subpoena power can be found in HIPAA's legislative history. One of the main legislative purposes of HIPAA was to prevent[] health care fraud and abuse. H.R. Rep. No. 104-496, at 67 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1865, 1866. As the House Ways and Means Committee Report stated in recommending that HIPAA be passed:

> In order to address the problem of health care cost inflation and make insurance more affordable, it is

(emphasis added), the question of the relevance of the documents requested is inherently a question of whether the DOJ had the statutory authority to issue this subpoena. Nevertheless, because the second element of our test for determining the enforceability of an administrative subpoena focuses on the relevance of the documents to the agency's investigation, we will address this issue under that heading. Thus, aside from the question of relevance, we are confident that the DOJ has satisfied § 3486's statutory requirements for issuing this administrative subpoena.

### 2.    Does the Subpoena Seek Documents Relevant to the DOJ Investigation?

While we have no circuit precedent addressing the administrative subpoena relevance requirement as it relates to documents requested under § 3486, other administrative subpoena cases in this circuit, as well as Supreme Court precedent, hold that relevance should be construed broadly. First, we note that the language of § 3486 indicates that the question of an administrative subpoena's relevance is not a question of evidentiary relevance, but rather is simply a question of whether the documents requested pursuant to the subpoena are relevant to the health care fraud investigation being undertaken. 18 U.S.C. § 3486(a)(1)(A). Furthermore, in *Markwood*, while we did not have to engage in a discussion of the relevance of the documents requested through the administrative subpoena, we did note often the deference that courts must show to the statutory authority of the administrative agency, stating that subpoenas should be enforced when "'the evidence sought by the subpoena [is] not plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of [its] duties.'" *Markwood*, 48 F.3d at 977 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)).

In *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994), this court discussed the relevance requirement as it related to administrative subpoenas issued by the EEOC. Following Supreme Court precedent, we explained that the

F.2d at 1077 (stating that, if "an on-premises search and inspection" is needed to execute an administrative subpoena, then a valid search warrant and a showing of probable cause is needed). Meanwhile, in this case, the DOJ has simply requested documents from Doe, a request which he has decided to challenge in federal court, as is his right. The immediacy and intrusiveness associated with a search are not present in the document request in this case, and thus the heightened requirement of probable cause is inapplicable here.

The district court in *In re Subpoenas Duces Tecum* also cited to the Supreme Court's decision in *United States v. LaSalle National Bank*, 437 U.S. 298 (1978), as a basis for applying a probable cause standard to an agency's subpoena request in a criminal investigation. *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d at 734. *LaSalle*, however, is also distinguishable. Although the Supreme Court in *LaSalle* did hold that it would be unlawful for the IRS to use its administrative subpoena power under 26 U.S.C. § 7602 solely to gather evidence for a criminal prosecution, the Court's decision was based not on constitutional considerations, but on Congress's failure to give the IRS the statutory authority to use its subpoena power in this fashion. *LaSalle*, 437 U.S. at 317 n.18. In our case, on the other hand, Congress has given the DOJ the express power to issue administrative subpoenas for all documents and things "which may be relevant" to its criminal health care fraud investigation. 18 U.S.C. § 3486(a)(1)(A). The Supreme Court's reasoning in *LaSalle* is inapplicable to this case.

We agree with the Fourth Circuit that the reasonable relevance test should apply to administrative subpoenas under § 3486. Both the Supreme Court and this circuit have long applied this test when reviewing administrative subpoena requests, and we see no convincing basis upon which to distinguish these binding precedents simply because this subpoena was issued pursuant to a criminal, as opposed to civil, investigation.

## C.  Applying the Law to the Subpoena in this Case

Following Supreme Court precedent on the enforcement of administrative subpoenas, this circuit has held that a subpoena is properly enforced if 1) it satisfies the terms of its authorizing statute, 2) the documents requested were relevant to the DOJ's investigation, 3) the information sought is not already in the DOJ's possession, and 4) enforcing the subpoena will not constitute an abuse of the court's process. *Markwood*, 48 F.3d at 980.

As noted earlier, the administrative subpoena at issue in this case requested nine categories of documents.  Of these, two involve requests for the files of patients who were referred to outside labs for additional testing.  Doe no longer disputes the reasonableness of the government's request for patient documents, however, and thus we will not address this aspect of the subpoena.  *See* Appellant's Reply Br. at 4.  Of the remaining categories, four encompass documents related to Doe's professional education and the extent of his ethical training, two involve Doe's personal and business financial records, and the final request seeks those bank and other financial records of Doe's children showing any assets that "were provided or derived from individual or jointly held assets of [John Doe.]" J.A. at 11 (Admin. Subpoena).

We will now address whether the requirements for enforcing an administrative subpoena have been met in this case, focusing on each of the different categories of documents in turn.

### 1.  Does this Subpoena Comply with § 3486's statutory requirements?

Petitioner does not argue that this administrative subpoena fails to comply with the statutory requirements of § 3486. Indeed, to do so would be difficult given the broad subpoena power that the statute gives to the Attorney General and her designees.  The provision states:

In any investigation relating to any act or activity involving a Federal health care offense, . . . the Attorney General or the Attorney General's designee may issue in writing and cause to be served a subpoena . . . requiring the production of any records (including any books, papers, documents, electronic media, or other objects or tangible things), which may be relevant to an authorized law enforcement inquiry, that a person or legal entity may possess or have care, custody, or control[.]

18 U.S.C. § 3486(a)(1)(A).  The Code broadly defines a "Federal health care offense" as a violation of, or a conspiracy to violate, a number of health-care related offenses, including 18 U.S.C. § 1035 (false statements relating to health care matters) and 18 U.S.C. § 1347 (health care fraud).  18 U.S.C. § 24(a)(1).  A federal health care offense also encompasses a variety of general criminal violations (*e.g.*, mail and wire fraud under 18 U.S.C. §§ 1341 and 1343), if those violations "relate[] to a health care benefit program." 18 U.S.C. § 24(a)(2).

Section 3486 also requires that any subpoena issued describe the objects to be produced and allow a reasonable period of time for the items to be assembled.  18 U.S.C. § 3486(a)(2).  The subpoenaed party need not deliver any documents requested pursuant to § 3486 more than 500 miles from the place where it was served.  18 U.S.C. § 3486(a)(3).

There is no dispute that the investigation at issue in this case relates to a potential federal health care offense.  While Doe does describe the subpoena as "overly burdensome[,]" J.A. at 7 (Mem. in Supp. of Mot. to Quash), he does not argue that the length of time given him to comply with the subpoena or the designated delivery location for the requested documents are beyond the scope of the authority granted in § 3486.  Instead, the primary point of contention in this case is whether the documents requested are relevant to the DOJ's investigation of Doe.  Because § 3486 authorizes subpoena requests for documents "which *may be relevant* to an authorized law enforcement inquiry," § 3486(a)(1)(A)