NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0117n.06

No. 17-5925

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 08, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| TENNESSEE WALKING HORSE BREEDERS' | ) | DISTRICT OF TENNESSEE |
| AND EXHIBITORS' ASSOCIATION, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: DAUGHTREY, GIBBONS, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Tennessee Walking Horse Breeders' and Exhibitors' Association ("TWHBEA") appeals the district court's denial of its motion for reimbursement of costs incurred complying with administrative subpoenas issued by the United States Department of Agriculture ("USDA"). We **AFFIRM**.

I.

Defendant-Appellant TWHBEA is a nonprofit corporation whose goal is to "maintain the purity of the [Tennessee Walking Horse], to promote greater awareness of the [breed] and its qualities, to encourage expansion of the breed, and to help assure its general welfare." [R.1 at PID 2] (citation omitted). TWHBEA established and maintains a Tennessee Walking Horse breed registry called "iPeds" to record the pedigrees of Tennessee Walking Horses. The iPeds system contains detailed ownership and other information on hundreds of thousands of horses that are sold or entered into shows and exhibitions across the country.

The Horse Protection Act ("HPA"), 15 U.S.C. §§ 1821–1831, is designed to end the practice of injuring show horses to alter their gait for competitive advantage. The HPA prohibits the showing, sale, auction, exhibition, or transportation of "sored" horses. "Soring" is a practice used to accentuate a horse's gait accomplished by irritating or blistering a horse's forelegs with chemical irritants or mechanical devices. *See* 15 U.S.C. § 1821(3). When a horse's front feet are sored, "the intense pain which the animal suffer[s] when placing his forefeet on the ground [causes] him to lift them up quickly and thrust them forward," which reproduces "exactly the distinctive high-stepping gait that spectators and show judges look for in a champion Tennessee Walking Horse" and related breeds. *Turner v. USDA*, 217 F. App'x 462, 463 (6th Cir. 2007) (internal citation and quotation marks omitted). The HPA and TWHBEA require that a Tennessee Walking Horse's gait be the product of breed and training, not soring.

The Secretary of Agriculture is charged with enforcement of the HPA and is authorized to conduct investigations into soring and inspect any horse show, horse exhibition, or horse sale or auction for evidence of soring. *See* 15 U.S.C. § 1823(e). To facilitate these investigations, the Secretary "may require by subpena [sic] the attendance and testimony of witnesses and the production of books, papers, and documents relating to any matter under investigation or the subject of a proceeding." *Id.* at § 1825(d)(1). If a recipient fails to comply with a subpoena, "the Secretary, or any party to a proceeding before the Secretary, may invoke the aid of any appropriate district court of the United States in requiring . . . the production of such books, papers, and documents under the provisions of this chapter." *Id.* at § 1825(d)(2). The Secretary has delegated the authority to administer and enforce the HPA, including the authority to issue administrative subpoenas under the HPA, to the Administrator of the USDA's Animal and Plant Health Inspection Service ("APHIS"). 7 C.F.R. §§ 1.29(a)(1), 2.80(a)(7); [R.12-2]; [R.12-5].

Pursuant to that authority, APHIS conducted inspections at seven shows or exhibitions in Alabama, Mississippi, and Tennessee from November 2014 to September 2015. Based on those inspections, APHIS initiated investigations into 218 Tennessee Walking Horses found to be sore in potential violation of the HPA. As part of its investigation, APHIS sought to determine the ownership of the horses at the time of the alleged violation. 15 U.S.C. §§ 1824(2); 1825(a), (b).

USDA issued a series of administrative subpoenas[1] to TWHBEA seeking horse ownership records and related information for 218 horses. TWHBEA initially responded to three subpoenas, provided the records requested, and attached an invoice for $100 with each response. The parties corresponded regarding the subpoenas, and TWHBEA "indicated [it] was at all times willing to comply with [the subpoenas] so long as [it was] compensated for the time and resources necessary to do so." [R.11 at PID 94]. APHIS denied the requests for compensation, stating "the HPA does not authorize the payment of any fee associated with producing subpoenaed records." [*Id.* at PID 94–95]. TWHBEA did not comply with subsequent subpoenas.

## II.

The United States filed suit under the HPA, 15 U.S.C. § 1825(d)(2), to compel compliance with the administrative subpoenas. TWHBEA moved for a protective order, asserting that compliance would pose an undue burden and significant expense. The United States filed a petition to enforce the subpoenas and the district court ordered TWHBEA to

---

[1] Although APHIS maintained a membership with TWHBEA from 2013 to 2015, TWHBEA elected not to renew APHIS's membership in 2015, informing APHIS "that it would no longer voluntarily provide any records from its iPeds database to APHIS, but that it would comply with any legally authorized subpoena." [R.12-2 at PID 136].

comply, stating that TWHBEA could "make application for the reimbursement of the costs of compliance once compliance is complete." [R.27].

TWHBEA complied and then moved for reimbursement of fees under Fed. R. Civ. P. 45. The district court initially granted TWHBEA's fee request, although it reduced TWHBEA's request by half, finding $50.00 per hour was proper.[2] The court found that TWHBEA was entitled to reimbursement because: (1) "subpoenas issued by administrative agencies are encompassed [by Rule 45]"; and (2) "the targets of the underlying investigation were the horses' owners, and the United States has not alleged that TWHBEA itself committed any wrongdoing in regards to the 'soring' of horses, [so] the Court finds TWHBEA to be a nonparty, and thus Rule 45(d)(2)(B)(ii) is applicable." [*Id.* at PID 838–39].

The United States then moved to alter or amend the judgment under Fed. R. Civ. P. 59(e). [R. 43]. The district court granted the motion, finding two clear errors of law: "First . . . TWHBEA is certainly a party to this litigation. The action was filed to require TWHBEA, the only Defendant, to comply with certain administrative subpoenas. The fact that the targets of the underlying investigation are horse owners, not TWHBEA, is irrelevant." [R.49 at PID 896]. Second, the court found error in the finding that Rule 45 applies to the administrative subpoenas in this case because "Rule 45 provides that a subpoena must issue from the court where the action is pending and may be issued by the Clerk of Court or attorney authorized to practice in the issuing Court," but the administrative subpoenas at issue "were issued by a federal agency pursuant to the HPA. . . . [and] were issued in furtherance of an agency investigation, not for

---

[2] Despite repeated stipulations in the record that the United States sought only the iPeds data on the horses at issue, TWHBEA sought fees for its employees to "manually pull, review and copy every file, verify accuracy of the information in the paper file vs that on iPeds and have the compiled information reviewed by counsel to insure compliance." [R.11 at PID 95].

litigation." [*Id.* at PID 896–97] (internal citations omitted). The court found that the previous order awarding TWHBEA fees erroneously relied on an advisory committee note to the 1991 Amendment to Rule 45 in finding the Rule applied to administrative subpoenas.

The court vacated the prior order awarding fees, and TWHBEA appealed.

III.

We review the district court's decision to grant a Rule 59(e) motion for abuse of discretion, *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir. 1998) (en banc) (citation omitted), although underlying questions of law—including the district court's interpretation of the Federal Rules of Civil Procedure—are reviewed de novo. *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 510 (6th Cir. 2001). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

IV.

A subpoena issued under Fed. R. Civ. P. 45 "is a mandate lawfully issued in the name of the court [or] by attorneys," and "[i]ts function is to compel the attendance of witnesses and the production of documents so that the court may have access to all of the available information for the determination of controversies before it." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 2451 (3d ed. 2008). The issuing party "must take reasonable steps to avoid imposing undue burden or expense" on the subpoena recipient. Fed. R. Civ. P. 45(d)(1). A court must protect a non-party subject to a subpoena if it "requires disclosure of privileged or other protected matter" or the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv). Under Rule 45(d)(2)(B)(ii), when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a

party nor a party's officer from significant expense resulting from compliance." To protect a nonparty, a court may require the subpoenaing party to tailor the subpoenas to impose a lesser burden, or may order the subpoenaing entity to reimburse the recipient for costs associated with compliance. Thus, the district court has a relatively active role in subpoenas issued pursuant to Rule 45.

By contrast, "a district court plays only a limited role in the enforcement of an administrative subpoena." *Doe v. United States*, 253 F.3d 256, 262 (6th Cir. 2001) (citation omitted). An "agency's request for documents should be approved by the judiciary so long as it 'is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *Id.* at 263 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652–53 (1950)). *See also Sec. & Exch. Comm'n v. Arthur Young & Co.*, 584 F.2d 1018, 1033 (D.C. Cir. 1978) ("[S]ubpoenaed parties can legitimately be required to absorb reasonable expenses of compliance with administrative subpoenas."); *United States v. Cont'l Bank & Tr. Co.*, 503 F.2d 45, 48 (10th Cir. 1974) ("[T]he existence of a general duty to respond to a government summons justifies the imposition of some financial burden").

When adopted in 1937, an advisory committee note stated that Rule 45 "does not apply to the enforcement of subpoenas issued by administrative officers and commissions pursuant to statutory authority." Fed. R. Civ. P. 45 advisory committee note (1937). In the first ruling, the district court found the rule applies to administrative subpoenas based on a committee note to the 1991 amendments, which it believed "ma[de] clear that subpoenas issued by administrative agencies are encompassed in the Rule":

> Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions. . . . In *CAB v. Hermann*, 353 U.S. 322 (1957),

> the Court approved as established practice the issuance of administrative subpoenas as a matter of absolute agency right. And in *NLRB v. Warren Co.*, 350 U.S. 107 (1955), the Court held that the lower court had no discretion to withhold sanctions against a contemnor who violated such subpoenas. The 1948 revision of Rule 45 put the attorney in a position similar to that of the administrative agency, as a public officer entitled to use the court's contempt power to investigate facts in dispute.

[R.40 at PID 839] (citing Fed. R. Civ. P. 45 note (1991)). The district court's reliance on this note was misplaced. Rather than signaling that Rule 45 is applicable to administrative subpoenas generally, which would negate the 1937 note accompanying Rule 45's adoption, the 1991 note merely discussed the addition of a provision that allowed attorneys to sign subpoenas on behalf of the court and the authority of the court embodied in those attorney-issued subpoenas. Nothing in the 1991 committee note indicates Rule 45 applies to administrative subpoenas generally.

TWHBEA additionally argues that Rule 81, which was substantively amended in 1946, voided the 1937 advisory committee note that stated Rule 45 does not apply to enforcement of administrative subpoenas. Rule 81 provides for the limited application of the Federal Rules to certain special proceedings, including "proceedings to compel . . . the production of documents through a subpoena issued by a United States officer or agency under a federal statute." However, advisory committee notes, which "provide a reliable source of insight into the meaning of a rule," *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002), remain valid unless subsequent rule publications state otherwise.[3] TWHBEA cites no subsequent rule publication so stating. Thus, the 1937 committee note explicitly stating Rule 45 does not apply to the enforcement of

---

[3] For example, the original advisory committee notes to Rule 6, from its 1937 adoption, list five subsections. However, because Rule 6(c) was rescinded in the 1966 amendment, reference to that subsection has been removed from all subsequent publications and the 1937 committee notes were amended to strike that section. *See* WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1161 (3d ed. 2008). If Rule 81 voided the 1937 advisory committee note, the note would not appear in current publications.

administrative subpoenas remains valid. *See EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986) (relying on the 1937 advisory committee note in finding Rule 45 does not apply to administrative subpoenas); *United States v. Friedman*, 532 F.2d 928, 936 (3d Cir. 1976) (same).

Nevertheless, although Rule 45 does not apply directly to administrative subpoenas, Rule 81 makes clear that district courts have discretion to apply the federal rules generally to proceedings to enforce administrative subpoenas. Fed. R. Civ. P. 81 advisory committee note (1946). The language of the Rule "allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with the summary determination desired," and Rule 81 "is drawn so as to permit application of any of the rules in the proceedings whenever the district court deems them helpful." *Id*; *see United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992) ("The effect of Rule 81(a)[5] is to give district courts discretion in a wide variety of subpoena enforcement proceedings to tailor the Federal Rules to the particular needs and purposes of the proceeding."). Thus, Rule 45 may be utilized by courts considering administrative subpoenas under Rule 81, at the discretion of the district court. At least two of our sister circuits have considered Rule 45 in this context. *See Maryland Cup*, 785 F.2d at 477–78; *Friedman*, 532 F.2d at 936.

In granting the government's Rule 59(e) motion, the district court considered whether Rule 81 made Rule 45 applicable to administrative subpoenas. Emphasizing Rule 81(a)(5)'s "except as otherwise provided by statute" language, the court found it was error to fail to consider the text of the HPA in the initial order, and that by authorizing payment of fees to witnesses but not for the production of documents, "the HPA speaks directly to the issue" of reimbursement. [R.49 at PID 898].

Although the memorandum opinion is not entirely clear in its analysis, to the extent that the district court found the HPA does not permit application of Rule 45 to administrative subpoenas under Rule 81, the court erred. Nothing in the HPA excludes consideration of the federal rules in an administrative-subpoena enforcement action. Courts have read the above provisions in Rule 81 to allow courts to apply the federal rules whenever possible—i.e., where statutory provisions are otherwise silent on procedural matters. *See, e.g.*, *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Tr. Corp.*, 5 F.3d 1508 (D.C. Cir. 1993) (stating that Rule 26(b)(3) applies to subpoena enforcement proceedings according to the terms of Rule 81(a)[(5)] in determining whether privilege exists in opposition to an order compelling enforcement of administrative subpoena); *N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 1000 (N.D. Cal. 2004) (awarding costs under Rule 81(a)[(5)] despite no provision for costs under the applicable statute); *United States v. Allen*, 578 F.Supp. 468, 472–74 (W.D. Wis. 1982) (holding that, under Rule 81(a)[(5)] and Rule 45, sanctions could be awarded in an administrative-subpoena enforcement proceeding).

Nevertheless, after apparently holding that the HPA precludes application of Rule 45 through Rule 81, the district court went on to state:

> Recognizing that different situations may persuade courts differently, the Court finds no reason to rely on Rule 45 under these circumstances and declines to hold that Rule 45 applies to the administrative subpoenas in this case. To require reimbursement of costs to the TWHBEA under Rule 45 would reward it for its disobedience to the subpoenas, when such reimbursement is not available under the HPA.

[R.49 at PID 899]. We understand this to be the district court's alternative ruling, assuming *arguendo* discretion under Rule 81, and declining to exercise that discretion to apply Rule 45 under the circumstances presented. *See Singleton*, 241 F.3d at 538.

We find no abuse of discretion.[4]   We note that the government repeatedly informed TWHBEA that it sought only the horse-owner information available on the iPeds system, information that TWHBEA could easily retrieve.   TWHBEA's Motion for Reimbursement sought $8,926.31 in costs, which included the costs of its employees (at $100 per hour) spending 85.25 hours to "research and compile" the information from iPeds and paper files, costs for supervisors to review that information, plus costs for copying, filing, and shipping.

Under these circumstances, although the district court had the authority to require the government to pay TWHBEA's costs of compliance, it did not abuse its discretion in declining to do so.   Therefore, we **AFFIRM**.

---

[4] We do not endorse an absolute rule that administrative subpoena recipients should never be reimbursed for costs simply because such reimbursement would reward disobedience.   Every administrative-subpoena enforcement action necessarily implicates disobedience, but it does not follow that the disobeyed administrative subpoena was not unduly burdensome.   Nor does it remove a court's discretion to allocate the cost of compliance when a recipient faces significant expense. *See EEOC v. Kronos, Inc.*, 694 F.3d 351, 371–72 (3d Cir. 2012); *Friedman*, 532 F.2d at 938.